```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )   Criminal No.
                              )   03-10140-RWZ
         v.                   )
                              )
JOHN G. PIZZARELLA, JACK      )
CALVIN, and VINCENT MEUCCI,   )
                              )
     Defendants.              )
```

**GOVERNMENT'S MOTION IN LIMINE**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully move the court, *in limine*, for an order: (1) barring the defendants from cross-examining the government's cooperating witness about certain of his/her criminal history; (2) permitting the government to offer evidence of a firearm and ammunition found in defendant Pizzarella's residence; and (2) permitting the government witnesses to testify about the entirety of their respective relationship with defendant Calvin, which includes marijuana trafficking.  The grounds for this motion are as follows.

**STATEMENT OF THE CASE**

**The Charges**

Count one of the Second Superseding Indictment ("the Indictment") charges the defendants with conspiracy to distribute, and to possess with intent to distribute, marijuana from the period August, 1999 through December 2002.  Count Two of

the Indictment charges defendants John Pizzarella ("Pizzarella") and Jack Walsh Calvin ("Calvin") with conspiracy to distribute, and to possess with intent to distribute, marijuana, from the periods from at least December, 2002, through April 6, 2003, in viol.  Both counts one and two are violations of 21 U.S.C. § 841 and 846.  Counts Three and Four are substantive counts charging both defendants Pizzarella and Calvin in Count Three, and Pizzarella, alone, in Count Four, with possession, with intent to distribute, marijuana.

The ten-year minimum mandatory sentence, set forth in 21 U.S.C. § 841(B)(1)(A)(vii), is applicable to Count One; the five-year minimum mandatory sentence, set forth in 21 U.S.C. § 841(B)(1)(B)(vii) applies to Counts Two, Three and Four.

**The Facts**

The government will show at trial that defendant Calvin is a Houston, TX, based marijuana dealer, who had customers in Indiana, Virginia and Massachusetts.  The government will show through two cooperating witnesses that the defendants had been involved in marijuana transactions for years, and that Calvin arranged for the transportation of over 6,000 kilograms of marijuana to Pizzarella and Meucci.[1]

---

[1] The United States is not disclosing the identities of the cooperating witnesses on the public docket, but notes that the defendants are aware of the full identities of these individuals.

The first cooperating witness (CW-1) will testify that he/she acquired marijuana from Calvin, and his associates, in Texas, and transported it to Massachusetts, for delivery to Pizzarella and Meucci.  He/She will also testify about meeting Pizzarella on other occasions, both in Massachusetts and elsewhere, in order to pick up money (on one occasion, over $1,000,000 in cash), for ultimate delivery to Calvin and associates.  CW-1 will testify that one such delivery of approximately 1,200 pounds of marijuana was made to Pizzarella's residence in Saugus, MA.

The second cooperating witness (CW-2), based in Virginia, will testify he/she purchased marijuana from Calvin, and that it was delivered by CW-1 to him/her in Virginia.  CW-2 will also testify that Calvin requested him/her to deliver a quantity of marijuana to Pizzarella and Meucci in January 2001 and CW-2 agreed.  CW-2 will testify about the trip to Massachusetts to deliver the marijuana during this time, on behalf of Calvin, and about money pick ups CW-2 made with Pizzarella.

In addition, CW-2 will testify about a controlled delivery of marijuana which he/she obtained from Calvin.  In late March, 2003, Calvin requested that CW-2 meet him in Kentucky to deliver a load of marijuana to defendant Pizzarella in Massachusetts.  CW-2 agreed and, on April 3 and 4, 2003, met Calvin in Louisville, Kentucky.  In Louisville, CW-2 and Calvin transferred

the marijuana from Calvin's rented RV to CW-2's truck. Unbeknownst to Calvin, the transfer of marijuana was surveilled and recorded. CW-2 drove the marijuana, accompanied by law enforcement, from Louisville to Massachusetts. CW-2 met up with Pizzarella and helped Pizzarella unload it.

**A.   Criminal History of CW-1**

CW-1 has a lengthy criminal history, and the government seeks to preclude the defendants from cross-examining CW-1 on convictions which are older than 10 years. These convictions include:

> 1983 conviction of burglary of a building;
>
> 1983 conviction of burglary of a habitation;
>
> 1984 conviction of felony theft;
>
> 1986 conviction of forgery; and
>
> 1987 conviction of evading arrest.

CW-1 was incarcerated for the burglary and felony theft convictions, and was released on parole in 1985. CW-1 served a 64-day sentence in 1987 for the evading arrest charge.[2]

Under Federal Rule of Evidence 609(b), the admission of a

---

[2] In 1992, three charges (bank robbery, interstate transportation of stolen property and conspiracy) were entered against CW-1 in three different jurisdictions. The cases were transferred to one jurisdiction for sentencing, and in March 1994, CW-1 was sentenced to 106 months' incarceration. CW-1 was released in November 1998. Since less than 10 years has elapsed since CW-1's release date, the government recognizes that the fact of these convictions is proper grounds for cross-examination. FRE 609(b).

conviction is barred if "a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction * * * , unless the court determines, in the interests of justice, that the probative value of the conviction * * * substantially outweighs its prejudicial effect."  F.R.E.609(b).  Rule 609(b) places a notice requirement on the proponent of the evidence should he or she seek to use an outdated conviction.  See Wierstak v. Heffernan, 789 F.2d 968, 972 (1st Cir. 1986) (holding over ten year old convictions for breaking and entering, larceny, and drug possession were properly precluded under FRE 609(b)); See also United States v. Orlando-Figueroa, 229 F.3d 33, 46 (1st Cir. 2000)(district court properly concluded that the probative value of the impeachment evidence did not substantially outweigh its prejudicial effect). See also, United States v. Tse, 375 F.3d 148, 159-164 (1st Cir. 2004) (discussing admissibility of prior convictions pursuant to F.R.E. 609(a)); United States v. Figueroa, 976 F.2d 1446, 1456-57 (1st Cir. 1992); United States v. Tapia, 738 F.2d 18, 21 (1st Cir. 1984).

In this case, the probative value of CW-1's convictions from the 1980's does not substantially outweigh the prejudicial effect, as required by F.R.E. 609(b).  Defendants bear the burden of demonstrating a "compelling reason" to justify the use of this evidence.  See Heffernan, 789 F.2d at 972; See also United States

v. Cavender, 578 F.2d 528, 530, n.7 (4th Cir. 1978).  There is no compelling reason in the instant case, especially because the defendants have plenty of ammunition with which to impeach CW-1. Among other things, CW-1 had previously received a sentencing benefit for cooperating against the defendants, and CW-1 is currently serving a lengthy term of imprisonment in Bureau of Prisons custody for drug trafficking.  In addition, the defendants can make whatever use they desire of the 1992 convictions of other, violent crimes, that appear on CW-1's record.

For these reasons, the older convictions on CW-1's criminal history should be precluded.

**B.    Weapons and Ammunition in Pizzarella's Residence**

During a consent search of Pizzarella's residence at 6 Applewood Lane, on April 6, 2003, law enforcement found drugs and weapons.  Specifically, they found approximately 2 pounds (889 grams) of marijuana hidden in Pizzarella's garage, a loaded firearm (a .45 caliber, semi automatic pistol), an antique handgun and a firearm identification card hidden in a shoebox in the master bedroom closet.

At trial, the government expects to offer the firearms into evidence. It is the position of the government that such evidence is relevant to the proceeding, is not 404(b) evidence, and not unduly prejudicial.  It is well settled that guns are recognized

6

"tools of the trade" in the drug business, "almost to the same extent as scales, cutting equipment and other paraphernalia." United States v. Cresta, 825 F.2d 538, 554 (1st Cir. 1987) (upholding admissibility of seized firearms in a drug prosecution). The evidence at trial will show that Pizzarella directed that a large quantity of marijuana be delivered to his home, used his home to store marijuana, and to conduct business. It will also show that, during the search, Pizzarella told law enforcement exactly where the weapons were located. As in the Cresta case, the weapons tends to prove Pizzarella's intent to promote and protect the narcotics conspiracy. As such, they are admissible.[3]

**C.    Calvin's Marijuana Dealing**

CW-1 will testify that CW-1 met Calvin through another acquaintance, Grady Higgins, and that during that first meet Calvin asked Higgins to drive him to Orlando, Florida to pick up money, which CW-1 believed to be drug money. CW-1 agreed and Calvin paid CW-1 approximately $1,200 for the trip. CW-1 agreed to be a lookout for Grady Higgins and Calvin in 1999, when approximately 1,200 to 1,400 pounds of marijuana were smuggled across the border. CW-1 will testify that most of this marijuana was transported to Indiana, but a small portion may have went to

---

[3]To the extent that the defendants argue that the weapons are too prejudicial, the court could remedy any unfair prejudice by a proper limiting instruction.

Boston, MA.  CW-1 will testify that from August 1999 through December, 2002, CW-1 transported marijuana to Calvin's customers in Indiana, South Carolina, Virginia and to Pizzarella in Boston.

CW-2, who was Calvin's Richmond, Virginia customer, will testify that CW-2 purchased marijuana from Calvin.  CW-2 will testify that initially CW-2 would pick up the marijuana from Calvin in Texas, but eventually, Calvin arranged to have the marijuana delivered to CW-2 in Richmond, VA.  CW-2 will testify that CW-1 delivered the marijuana to CW-2.  CW-2 will also testify that CW-1 indicated that CW-1 was proceeding "up north," to deliver the remaining portion of the load.  CW-2 will testify that Calvin then asked CW-2 to deliver marijuana to Boston, and that CW-2 finally agreed.  CW-2 will testify that he/she made one trip to Boston with marijuana to give to Pizzarella.

It is the position of the government that the above outlined testimony is not 404(b) evidence at all, but, is in fact, intrinsic evidence of the charged crime.  The fact that CW-1 was on the way to Boston with a marijuana delivery, but stopped off first to Calvin's other customers, clearly is intrinsic to the government's proof of the historical conspiracy, as Calvin's other customers are essentially, uncharged coconspirators.  The fact that CW-2 purchased marijuana from Calvin is likewise intrinsic, especially because it was delivered by CW-1, who was Boston-bound with the remaining load.

To the extent that the Court deems otherwise, the government moves that the evidence be permitted pursuant to Rule 404(b) of the Federal Rules of Evidence.

CW-1's and CW-2's testimony about their respective knowledge of Calvin's prior drug activities is admissible under Rule 404(b), as it establishes and explains the relationship between the Calvin and them, and is probative of Calvin's knowledge and intent.

A prior bad act is admissible pursuant to Fed. R. Evid. 404(b) if it satisfies a two-part test.  First, "the evidence must have 'special relevance' to an issue in the case, such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain.'" United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000). See also, United States v. Smith, 292 F.3d 90, 98-99 (1st Cir. 2002) (first step in 404(b) analysis is to "assess whether the evidence is specially probative to an issue in the case and is not merely offered to show the defendant's bad character or propensity for crime.").  "Special relevance" includes, for example, proof of a person's intent or state of mind to commit a crime, opportunity, knowledge, or absence of mistake.  See United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996), cert. denied 117 S.Ct. 147 (1996); United States v. Brown, 34 F.3d 569, 573 (7th Cir. 1995)(prior bad acts may be admitted as proof of an

element of a crime, such as intent, if the act demonstrates how the defendant's behavior was purposeful rather than accidental), cert. denied 513 U.S. 1167 (1995); United States v. Dworken, 855 F.2d 12 (1st Cir. 1988)(evidence of defendant's prior drug dealings over a three year period admissible to provide context, explain relationship between witness and defendant and to prove intent).  Further, if the evidence is, as here, inextricably intertwined with the charged conduct, it is admissible under Rule 404(b).  United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989).

Second, under Rule 403, the evidence "may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Id.  See also  United States v. Ferrer-Cruz, 899 F.2d 135, 137 (1st Cir. 1990); United States v. Kadouh, 768 F.2d 20, 21 (1st Cir. 1985).

The evidence of Calvin's narcotic activity satisfies both of these criteria.  First, one of the elements the government must prove beyond a reasonable doubt is Calvin's intent to distribute marijuana.  CW-1's testimony regarding Calvin's past dealings in marijuana is "specially probative" on this element.  See, United States v. Dworken, 855 F.2d at 27-28.

Further, the evidence is not unfairly prejudicial to Calvin. As Rule 403 makes explicit, the law shields a defendant "against unfair prejudice, not against all prejudice."  United States v.

10

Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998) (internal quotation marks omitted); United States v. Rodriquez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989( ("All evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided."). Cw-1's testimony, and CW-2's testimony explains the relationship between them and Calvin – it explains why Calvin would trust each of them with custody of the marijuana, and permit them to travel, unescorted, with it to Pizzarella. The probative value of the evidence is quite high because it bears directly on the disputed issues of motive, intent and knowledge, and it is not "substantially outweighed" by the risks of prejudice, confusion or waste of time. See, e.g., United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990) (introduction of prior drug trafficking conviction admissible to prove defendant's knowledge that bag found in car contained cocaine). Therefore, the testimony regarding Calvin's drug trafficking is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence.

For these reasons, the government requests that the court grant its motion and: (1) bar the defendants from raising on cross-examination CW-1's older criminal history; (2) permit the government to introduce the firearms found in Pizzarella's residence; and (3) permit CW-1 and CW-2 to testify about the entirety of their respective relationship with Calvin.

                      MICHAEL J. SULLIVAN
                      United States Attorney

       By:   /s/ Susan M. Poswistilo
            SUSAN M. POSWISTILO
            WILLIAM WEINREB