**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
NO. CR 03-10140-RWZ**

**UNITED STATES OF AMERICA**

**V.**

**VINCENT MEUCCI**

_____

**DEFENDANT'S PRESENTENCE MEMORANDUM**

_____

## INTRODUCTION

Vincent Meucci was indicted by a Federal Grand Jury on
February 11, 2004. That Grand Jury, sitting in Boston
returned a Four Count Superceding Indictment charging John
G. Pizzarella, Jack Walsh Calvin and Vincent Meuccci with
Conspiracy to Distribute, and Possess with Intent to
Distribute Marijuana, in violation of 21 U.S.C. § 846
(Counts 1s and 2s); Possession with Intent to Distribute
Marijuana and Aiding and Abetting, in violation of 21
U.S.C. §841 and 18 U.S.C. § 2 (Count 3s); and Possession
with Intent to Distribute Marijuana, in violation of 21
U.S.C. § 841 (Count 4s). The Superseding Indictment also
contained a Forfeiture Allegation pursuant to 18 U.S.C.

1

§853. Vincent Meucci is named in Count 1s, as well as in
the Forfeiture Allegation. Vincent Meucci was not named in
the criminal complaint filed on April 7, 2003, or the
original indictment returned on April 30, 2003.

On February 12, 2004, Vincent Meucci was arrested by
the U.S. Marshals and appeared in U.S. District Court, at
Boston, before U.S. Magistrate Judge Judith G. Dein. Judge
Dein released the defendant on $50,000 unsecured bond with
restrictive conditions.

On December 15, 2004, a Federal Grand Jury at Boston,
Massachusetts returned a four count Second Superseding
Indictment charging John G. Pizzarella, Jack Walsh Calvin,
and Vincent Meucci with Conspiracy to Distribute, and to
Possess with Intent to Distribute, Marijuana, in violation
of 21 U.S.C. § 846 (Counts 1s and 2s); Possession with
Intent to Distribute Marijuana and Aiding and Abetting, in
violation of 21 U.S.C. §841 and 18 U.S.C. § 2 (Count 3s);
and Possession with Intent to Distribute Marijuana, in
violation of 21 U.S.C. § 841 (Count 4s). The Second
Superseding Indictment also contained a Forfeiture
Allegation pursuant to 18 U.S.C. § 853. In addition, the
Second Superseding Indictment contained a "Notice of
Additional Factors". Vincent Meucci is named in Count 1s,

2

as well as in the Forfeiture Allegation and the Notice of
Additional Factors.

Count 1 of the Second Superseding Indictment charges
that from a date unknown to the grand jury, but at least by
in or about August 1999, and continuing to on or about
December 2002, at Saugus, Malden  and elsewhere in the
District of Massachusetts and Louisville, Kentucky,
Houston, Texas and elsewhere, John G. Pizzarella, Jack
Walsh Calvin, and Vincent Meucci knowingly and
intentionally conspired and agreed with each other, and
with others known and unknown to the grand jury, to
distribute, and to possess with intent to distribute,
marijuana, a Schedule 1 controlled substance, in violation
of 21 U.S.C. § 841.  All in violation of 21 U.S.C. § 846.

The Second Superseding Indictment contained notice of
eight "Additional Factors".  Factors #1 and #6 involve
Meucci. They are as follows:

1.  The offense charged in Count 1 of the Second
    Superseding Indictment involved at least 3,000
    kilograms, but less than 10,000 kilograms of a
    mixture or substance containing a detectable
    amount of marijuana. Accordingly, 21 U.S.C.
    §841(b)(1)(A)(vii) applies to this count.

6.  As to the offense charged in Counts 1 of the
    Second Superseding Indictment and relevant
    conduct as described in U.S.S.G. §1B1.3, Vincent
    Meucci is responsible for at least 3,000
    kilograms, but less than 10,000 kilograms of a
    mixture or substance containing a detectable

3

> amount of marijuana.  Accordingly, 21 U.S.C. §
> 841(b)(1)(A)(vii) and U.S.S.G. §2D1.1(c)(3) apply
> to this defendant.

On March 25, 2005, Vincent Meucci appeared before this
Court sitting in Boston and offered a plea of guilty to
Count I of the Second Superceding Indictment.  The Court
deferred acceptance of the Plea until disposition which is
currently scheduled for June 14, 2005.

Mr. Meucci's decision to plead guilty in this case was
based on the terrible impact he felt a trial would have on
his family as the indictment alone has caused in large
part, the end of his marriage and the estrangement of his
children who now reside in Naples, Florida.  A lengthy
trial would further impact the people he cares about.

Mr. Meucci has remained employed on a very steady
basis as a car salesman/manager since the date of his first
indictment in February of 2004.

Mr. Meucci has fully accepted responsibility for the
crime with which he has been charged.  He directs this
court's attention to a discussion of factors of his
particular case.

Mr. Meucci is confident that this court will take all
of these matters into consideration at his sentencing.

The Pre Sentence Report prepared by United States
Probation Officer Jennifer D. Sinclair in this matter has
fixed the Now-Advisory Guideline at Thirty-One which has a
range of 108-135 months. (see paragraph 48 of the PSR).
It does allow that if the Defendant truthfully proffers to
the Government, then the defendant would be eligible for
the safety-valve under U.S.S.G. § 5C 1.2 with a further two
point reduction and more importantly the Court would also
have the authority to impose a sentence below that which is
statutory mandated. Mr. Meucci truthfully proferred to the
Government on June 2, 2005. When that is taken into
account under Probation calculation the total offense level
would be Twenty-Nine with an advisory guideline range of
87-108 months.

It is the defendant's position after a discussion of
his role in the offense, his guideline range should be
adjusted to reflect his culpability in the conspiracy when
viewed as to others in the same conspiracy.

### DEFENDANT'S VERSION AND
### ROLE IN THE OFFENSE

Pursuant to §3B1.2, Mr. Meucci requests that this Honorable
Court decrease his offense level by four points based on
his minimal participation in the criminal activities that
have been alleged against him. The Court has discretion

5

under the Federal Sentencing Guidelines to determine whether to apply subsections (a) which calls for a four point decrease in offense level or subsection (b) which calls for a two point decrease in offense level. United States v. Brandon, 17 F.3d 409 (1994). If the Court feels that the case falls between (a) and (b) it can decrease the offense level of the defendant by 3 points. *Federal Sentencing Guidelines §3B1.2 (2004).*

The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. United States v. Santos, 357 F.3d 136 (2004). As with any other factual issue, the Court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted. *Federal Sentencing Guidelines §3B1.2, commentary 3(C) (2004).*

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration from an adjustment under this guideline. A defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or

6

storing drugs and who is accountable under §1B1.3 only for the quantity of drugs that the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline. *Federal Sentencing Guidelines §3B1.2, commentary 3(A) (2004)*. Such is the case of Mr. Meucci, who has been charged with and has admitted accountability to the quantity and weight of drugs involved in the matter before the Court. It is clear from the facts as stated by Mr. Meucci and the Government that he had substantially less culpability than the others who were involved in this conspiracy.

§3B1.2 applies to a defendant who plays a minimal role in concerted activity. United States v. Prigmore, WL 464030 (D. Mass 1996). It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.[1] In the case at bar, Mr. Meucci should be viewed in this conspiracy as the person who is at the bottom of the totem pole and who is the least culpable of all of those involved in this conspiracy.

While the role Mr. Meucci played in this conspiracy was local, the conspiracy itself extended across the United

---

[1]   §3B1.2 Commentary (4) speaks of the intended use of section (a) for minimal participation will be used infrequently, also see United States v. Rodriguez Cortes, 949 F.2d 532 (1991). The defendant suggests that the application of §3B1.2(a) should be applied to this matter as his culpability and participation in this conspiracy was limited to unloading and storage of marijuana. Mr. Meucci was not involved in negotiating, purchasing, weighing, packaging and/or selling of marijuana, he was in simple terms the labor.

7

States and the Mexican border. The other participants in
these matters whose roles were much more significant than
Mr. Meucci's have already received sentences, including
Grady Higgens, who imported, packaged and distributed the
marijuana and received a sentence of Three Hundred (300)
months of custody and Sixty (60) months of supervised
release, Joseph Paul Douglas who transported marijuana
received a sentence of Forty-one (41) months of custody and
Sixty (60) months of supervised release, Eric Allen
Davidson who transported marijuana across state lines from
Texas to Indiana to North Carolina to Boston received a
sentence of One Hundred and Forty-four months (144) and
Sixty months (60) of supervised release, Johnnie Dale Elrod
who received a sentence of Forty-eight (48) months of
custody and Forty-eight (48) months of supervised release
and Hubert Jr. Meeks who received a sentence of Ninety-
eight (98) months of custody and Forty-eight (48) months of
supervised release. The above individuals were more
culpable and more involved in this conspiracy.

        Mr. Meucci's role in this matter consisted primarily,
if not solely of unloading marijuana and storing marijuana
for short periods of time. The Government, the Defense
contends would find that characterization accurate.  Mr.
Meucci's conduct was always at the direction of someone

                                8

else, specifically Mr. Pizzarella.  Mr. Meucci never

negotiated and or set prices for the purchasing and/or sale

of marijuana.  Mr. Meucci never negotiated with others

involved in this conspiracy, he never made decisions,

guided persons on where to make delivery and/or set

delivery times.  Further, Mr. Meucci was not involved in

making arrangements for transportation, purchasing

marijuana or handling money from the proceeds of the sale

of marijuana.  His primary and sole function in this

conspiracy was strictly to load and unload the marijuana

and to store it for short periods of time.[2]  Further Mr.

Meucci was not involved in any further distribution of

marijuana once it reached Massachusetts.

Mr. Meucci clearly falls into the category of Minimal

Participant as it is set-forth in the Federal Sentencing

Guidelines.  Accordingly, he should be awarded a four point

role adjustment and decrease of his offense level based on

this minimal participation.

Mr. Meucci also feels that he is entitled to an

additional two (2) point reduction in his offense level

based on his safety valve eligibility under §5C1.2(5).  Mr.

Meucci agrees with the Probation Department in their

---

[2]     Mr. Meucci has proffered to the Government that he did on one occasion count money and took a
ride to deliver that money with Mr. Pizzarella.

9

response to his objections to the Pre-Sentencing Report
that he is not eligible for a §5K1.1 reduction because he
has in fact not co-operated but only truthfully provided to
the Government all information and evidence that he had
concerning the offense that was part of the same common
scheme/plan. Any reference that Mr. Meucci made regarding
a downward departure pursuant to §5K1.1 was in error and
was meant to apply to §5C1.2(5). This was a typographical
error in his objections to the Pre-Sentencing Report.

Pursuant to §5C1.2(5), a defendant can be sentenced in
accordance with the applicable guidelines without regard to
any statutory minimum sentence if the court finds that the
defendant meets the criteria set forth in §5C1.2(5) which
states:

... not later than the time of the sentencing hearing,
the defendant has not truthfully provided to the Government
all information and evidence the defendant has concerning
the offense or offenses that were part of the same courts
of conduct or of a common scheme or plan, but the act that
the Defendant has no relevant or other useful information
to provide the Government is already aware of the
information shall no preclude a determination by the court
that the defendant has complied with this requirement.
*Federal Sentencing Guidelines §3B1.2, commentary 3(A)
(2004).*

Mr. Meucci met with the Government on June 2, 2005 and
after a full debriefing provided a full and truthful
proffer of all the information that he had regarding the
charge for which he has agreed to plea. In satisfying

10

§5C1.2(5) a two level reduction is warranted per U.S.S.G. §
2D1.1(b)(6).

Mr. Meucci further states that in being eligible for
the safety valve, in satisfying the elements of §5C1.2(5)
in this specific matter that his actions should be viewed
as those of a minor role player. As such, the Court must
determine due to his actions that he is not a leader or
organizer and must receive an additional two point
reduction of his offense level. This applies as a
mitigating role cap when viewed in light of Mr. Meucci
solely being at the direction of others and never having
any real authority in this wide ranging and multi-state
conspiracy. Given the above facts, the Defendant, Vincent
Meucci would state that his adjusted total offense level be
of a Guideline Range of 23.

## PERSONAL HISTORY

Mr. Meucci is forty years old and born in Boston,
Massachusetts. He is the youngest of three children and
was raised in Somerville, Massachusetts. He describes his
childhood as "good" and reports he lived close to his
cousins and other close family friends. Mr. Meucci states
he is the only one in his family who has been the subject
of criminal charges and that being the subject of these

charges has not only saddened and embarrassed himself but, also his family. He has expressed remorse and stated he is even more embarrassed to think of how his parents raised him.

He is now a divorced father of two, having been divorced from his wife, Gina Rose Meucci in August 2004. Mrs. Meucci states through the PSR and in her letter of support that Mr. Meucci is the "best father ever", but feels that his friends were not there for him and she really believes he was used by them. Mrs. Meucci clearly felt betrayed by Mr. Meucci's criminal activity, but that in no way changed her opinion of him as a good person and a wonderful loving father. She now fears that her children will be truly devastated if their father is incarcerated.

Mr. Meucci has maintained employment through these difficult times and has remained current on his child support obligations. He is in real fear that if incarcerated his children are the ones who will suffer. This truly haunts him and he wishes he could take it all back as he repeated in Paragraph 78 of the PSR.

## MENTAL AND EMOTIONAL HEALTH

Mr. Meucci reports he is in both good mental and emotional health and keeps himself busy with work so as not to think about his current legal difficulties.

## SUBSTANCE ABUSE

Mr. Meucci reports use of both alcohol and some drug use.  Although his claim is that he has conquered both, Mr. Meucci is someone who could benefit from counseling.

## CRIMINAL HISTORY

Mr. Meucci has a criminal history which is a Category 1.  He has been trouble free since his arrest and has traveled outside of the State with the court's approval on three occasions with no problems.

## MEDICAL CONDITION

Mr. Meucci reports that his in generally good health.

## GUIDELINES NOW ADVISORY
## POST BOOKER DISCUSSION

Mr. Meucci suggests to this Court that in reviewing his case given the type of person he is, that the Court should further depart from his guideline range.

The Court has this authority under United States v. Booker, 125 S.Ct. 738 (2005), which allowed for the

13

guidelines to be advisory and not mandatory in setting a
Defendant's sentence.

If the sentence in this case were still computed
solely under the Guidelines (whatever the court finds it to
be) the sentence reflected in that guideline would be harsh
in light of who the defendant is and how he has lived his
life.

In charging the defendant in this case, schemes of
conspiracies (as here) alleged over an extended period of
time sometimes do not truly reflect the person or his
crime.   Therefore, sentencing disparities in the Guideline
Regime abound nonetheless.   Booker's impact, the defendant
suggests is to impose a sentence that is reasonable and
reflects punishment with like actions in other similar
cases.

Accordingly, after nearly twenty (20) years during
which sentencing discretion had been taken away, it has now
been given back to the United States District Courts.
There is no longer any need to follow the old departure
methodology because the guidelines are no longer binding,
and courts need not justify a sentence outside of them by
citing factors that take the case outside the "heartland".
Rather, courts are free to disagree, in individual cases in
the exercise of discretion, with the actual range proposed

14

by the guidelines, so long as the ultimate sentence is reasonably and carefully supported by reasons tied to the Section 3553(a) factors.

In order to satisfy its concerns that the United States Constitution's Sixth Amendment jury trial right was being violated by the rigid application of the sentencing guidelines, the Court severed the provision of the federal sentencing statute that made the Guidelines mandatory, thus rendering the Guidelines advisory. Booker at 757. As a result, this Court is no longer bound by the Guidelines but must consult them and take them into account when sentencing. Booker at 767.

Courts now sentence under the standard of "reasonableness", which is guided by the statutory factors set out in 18 U.S.C. Section 3553(a), together with the now advisory guidelines. Booker at 766-767. It is only upon this ground of reasonableness that any appellate court can review a sentence imposed by the District Court. Booker at 757, 765-66.

It is for the Court to determine that reasonable point where a sentence should fall in any given case. The Court cannot adopt a position taken by the Government or Probation that a criminal sentence should fall within the Guideline Range, absent highly unusual circumstances. Such

15

a "wholesale application of the Guidelines as per se
reasonable, effectively converts the now-advisory
guidelines to mandatory guidelines triggering
unconstitutionality in the same way that the Washington
guidelines did in Blakely". See Washington v. Blakely, 124
S. Ct. at 2538; Booker, 125 S. Ct. at 749.

Therefore, this court should not preserve a de-facto
mandatory Guideline scheme by affording the Guidelines a
presumption of reasonableness in every case, because it
would circumvent Booker's substantive holding and defy the
directive that the Court consider the factors in 28 U.S.C.
Section 3553 (a).

That statute, otherwise known as the
Sentencing Reform Act, requires courts to:

"impose a sentence sufficient, but not greater than
necessary, to comply with the purposes set forth in
paragraph 2" which are "(A) to reflect the seriousness of
the offense, to promote respect for the law, and to provide
just punishment for the offense; (B) to afford adequate
deterrence to criminal conduct; (C) to protect the public
from further crimes of the defendant; and (D) to provide
the defendant with needed educational or vocational
training, medical care or other correctional treatment in
the most effective manner."

The statute also further directs sentencing courts to
consider:

"(1) the nature and the circumstances of the offense and
the history and characteristics of the defendant; (3) the
kinds of sentence available; (6) the need to avoid unwanted
sentencing disparities among defendants with similar
records who have been found guilty of similar conduct; and