(7) the need to provide restitution to any victims of the offense."

Using these new standards, and posing the same arguments and reasons as in the previous paragraphs, Mr. Meucci seeks this Court's consideration in pleading for a lesser sentence.

The defendant cannot argue that his crime was not serious, and he recognizes the danger of such a position. However, when the allegations against him are weighed against the background of this particular defendant, it is clear that more can be achieved if Mr. Meucci is sentenced in a manner other than a lengthy incarceration. In other words, jailing Vincent Meucci for a long period serves no useful purpose if this Court realizes that the purpose of punishment in this case should be rehabilitation.

Rehabilitation is the primary goal of punishment. As stated by the American Bar Association: "The basic idea underlying a sentence…is very simple. Sentencing is in large part concerned with avoiding future crime by helping the defendant learn to live productively in the community which he has offended against… the best way to pursue this goal is to orient the criminal sanction towards the community setting in those cases where it is compatible with the other objectives of sentencing". American Bar

17

Association Project in Standards for Criminal Justice,

Standards Relating to Probation 1.

With regard to rehabilitation, Mr. Meucci is a prime

candidate.  Given his age, personal situation and

educational background, lengthy incarceration cannot be

said to serve any useful purpose.  Punishment by a long

period of incarceration, added to what the defendant has

already endured, would be horribly cruel.

It is the position of the defense that despite all

which has happened, and primarily because of his family and

friends as well as the physical, mental, emotional and

financial punishment which the defendant has already

suffered will provide the defendant with the appropriate

motivation to re-prioritize his life, which in fact he has

already done.  A lengthy incarceration, will only cause

more severe pain and tragedy than has already occurred.

The tragedy of this case, which is recognized, is that

sentencing must occur in this situation and a life, such as

Vincent Meucci's must be further impacted.  Yet it is also

and more importantly clear that he has devastated himself

and his family by his actions and is suffering for it.

So can this Court allow itself to see itself clear to

flexibly resolve this case so that Mr. Meucci can clear his

debt and maintain his support within the community?  The

defendant suggests that this Court can accomplish that goal. Although his fear of imprisonment is understandable but may not necessarily be acceptable in fashioning a reasonable sentence, there are unique reasons to allow Mr. Meucci such consideration in this case. Those factors would include his clear willingness to answer for his actions, his desire to make amends for his wrongdoing and the specific background facts involved in his situation. He has also significantly shortened and alleviated the Government's burden in their case by his voluntary disclosure and acceptance of responsibility.

Mr. Meucci deserves a second chance, and a reduced sentence of incarceration would simply attempt to save what is left of what could be a very productive life. Mr. Meucci's remorse is real, and he knows that he has done wrong. He also does not minimize the severity of his acts. He simply feels that a short period of incarceration would allow him to get back to society as a rehabilitated, punished and hopefully renewed human being. His family and friends await him with open arms. Mr. Meucci is healthy, has the support of his family and friends and realizes his crime.

The true measure of Mr. Meucci's character is in the obvious support and devotion of the people who have known

19

him.  It appears that Mr. Meucci has turned the corner in many ways.  He is clearly a man of great personal character.  Yet despite that fact, it is also clear that Mr. Meucci feels the terrible remorse, pain and suffering which he has brought upon himself and his family.  It is clear that no one will benefit from a lengthy incarceration of Mr. Meucci in light of his family situation and the circumstances of his particular case.  Yet, because he is clearly a man who has done a great deal of good in his life, he seeks this Court's lenience.

Therefore, the defense respectfully urges the Court be guided by the interests of all parties to this disposition, as well as by an understanding of the individual who is now being considered for sentencing.  In conclusion, the defendant would suggest that he is a prime candidate for this Court's leniency based upon the totality of the circumstances in the instant case.

Respectfully Submitted,
Vincent Meucci,
By his Attorneys,


_____
Robert N. Launie, Esq.
BBO#548826
Paul V. Marino, Esq.
BBO#635444
Launie & Marino
1200 East Street
Westwood, MA   02090
(781) 326-9213

21

**ATTACHMENT A**

June 8, 2005

Hon. Raya W. Zobel
U.S. District Judge
U.S. District court for the District of Massachusetts
One Courthouse Way
Boston, MA 02210

RE: Character reference for Vincent Meucci

Dear Ms. Zobel,

I have known Vincent Meucci for over thirty years, as a friend of his family's when he was a child, and as a close friend in his own right for a long time. He has helped me greatly on several occasions, and I hope this letter will help him in his upcoming court proceedings.

Vincent is a fine man – one who cares deeply about his family and friends, and who gives freely of his time and energy. The matter that brings him before you seems completely foreign to me, and is not consistent with the friend I know. He has always been at his best when it comes to children, and, with a young son and daughter of his own, I can't imagine the harm a long absence would inflict on them – and also on him.

I know he is truly sorry for what has occurred, and ask that you show him as much leniency as possible. He has a great deal to offer his children, his family, and his friends, and I believe that, given the chance to move forward in freedom, he will once again be the happy, productive, and supportive father and friend we all know.

Two particular times with Vincent come to mind as I write this letter. First, as a teenager, Vincent was uniquely able to relate on an adult level, even when he still acted every bit of his age. He was always interested in advice from myself and other adult relatives and friends – and he took that advice seriously. It was satisfying to see him look for guidance with sincerity, take the time to understand what we discussed, and then act on it. He has always treated family members and friends with the utmost respect, and still makes it a point to introduce people to each other in ways that showed how much he values those close to him.

Another incident is more dramatic, and is something I will never forget. About 10 years ago, I worked in an office across from South Station in Boston. One summer day, a mentally disturbed young man began following me everywhere I went – from the office to the train station, to and from restaurants where I went to lunch, even when I went out for coffee. He would simply shadow me, muttering unintelligible language while walking only a pace or two behind me.

The police didn't seem to want to get involved, and I couldn't reason with this person at all. After about a week, I began to fear for my safety, and even considered resigning my job – a wonderful position developing science and history museum exhibits. One night over dinner with Vincent, I mentioned the story. He immediately volunteered to help, and, the next day, he met me (and my shadow) outside my

office. Vincent put a friendly arm around the young man's shoulder and began walking with him down the street, obviously engaging him in the sort of friendly conversation Vincent can carry on better than most people I know. After a block or so, they stopped and continued to talk for several minutes – or at least Vincent did. Then both Vincent and the young man turned toward me, and the young man waved to me, then walked away. I never saw him again.

That's the kind of person, and the kind of friend Vincent is. In addition to how much he cares about people, he knows how to communicate, and he uses this talent to do good. In recent years, watching him interact with his children, I have often been reminded of that day in which this big man used his gentle powers of persuasion to make a real difference in my life. Vincent knows how to help people, and he knows how to help his children grow up to be their best.

Perhaps you have seen some of these characteristics yourself – he is a playful, happy, and sincere person with a knack for being at the center of his friends and family, and with the strength of character to be a positive influence almost all the time.

Not having him around would be a devastating blow to his children, his family, and his friends. Having known him since he was a child himself, and talking with him about his court case a great deal, I am confident that this was an isolated lapse of judgment that will not occur again.

Thank you for giving me the opportunity to express my love and support for Vincent Meucci. If you would like any further information, I would be glad to provide it.

Sincerely,

Tom Martorelli
9 Pleasant Avenue
Somerville, MA 02143

**ATTACHMENT B**

9 Pleasant Avenue
Somerville, MA 02143

June 8, 2005

Hon. Raya W. Zobel
U.S. District Judge
U.S. District court for the District of Massachusetts
One Courthouse Way
Boston, MA 02210

Dear Judge Zobel,

Vincent Meucci is my younger cousin, and I have known him all his life. My two sisters and I are the oldest of all our cousins on my mother's side; Vincent's mother and my mother were sisters. Vincent is the youngest of three children, and when we were young my sisters and I often took care of him while his mother came into Boston to go shopping with her sisters on weekends. We also spent a great deal of time at Vincent's family's house and ate many a meal there.

Even today, my mother hosts a weekly Sunday dinner, which Vincent and a number of other cousins frequently attend, along with my sisters and myself. On many of these family occasions, Vincent brings his children to dinner as well. In many ways, Vincent is a traditional family man, and he has a lot of respect for family values.

Both of Vincent's parents died at a very young age. His father, my Uncle Amadeo, was a hard-working man who never did anything wrong in his life. My Aunt Rosie, Vincent's mother, was completely dedicated to raising her children and maintaining a loving home environment. Because Vincent was the youngest child, he got a lot of attention and support from her while he was growing up.

My aunt's death was sudden, and was a great loss to our entire family; she had the best sense of humor in our family, a characteristic her son Vincent definitely inherited. As bad as it was for us, her loss was far worse for Vincent, his sister, and his brother.

Vincent's current troubles represent a tremendous and unexpected failure in our family. Because of his engaging personality and his sincere interest in other people, we had high hopes for his success. He has his own family and is a wonderful father. Then, suddenly, we learned that he might go to prison. My mother told me last week that she herself feels like a failure. She feels as if she let her sister Rosie down by not being able to protect her youngest son, and by not giving him the guidance he needed.

Vincent is the father of two young children, who love him a great deal and who look up to him for guidance and support. They have a wonderful relationship. Vincent plays with them, and uses playtime to teach them the kinds of lessons that only a father can. Having spoken with his former wife Gina, I can honestly say that she will miss him greatly, not only for the support her has given her, but also for the support he has given to their children.

Our extended family is very large, with many cousins, aunts, and uncles. Vincent is close to all of us, and his loss would be hard to bear. Several of his aunts and uncles are elderly, and they have expressed the fear that they might never see him again.

Still, our loss would not be the worst. Vincent and his children would bear the most pain. Again, because we have a large family, there are many fathers and children whose relationships can be compared with Vincent's role as a parent at a time like this. It might not be completely fair to the others, but in my opinion, Vincent has the best way with his children of all of us. He could not be replaced, and his absence for even a few years would coincide with a time in their lives in which his children might need him most of all.

Vincent and I talk a great deal, and I know that his case is taking a toll on him. Yet he is facing it with a strength that shows what a good person he is – and always has been. As his court date approached, Vincent personally called each of his aunts and uncles to tell them directly what was going on, and what might happen to him. His willingness to face the truth, his courage in insisting that he be the one to tell his family, and his efforts to ease their feelings of sorrow for him are admirable, in my opinion. As difficult as it was to come to terms with what he had done to people who care about him the most, it was the right thing to do.

This incident comes at a time when so many other things were going well for Vincent. He was happy with his children, he had established a successful career for himself, and he has consistently been surrounded by people he loves, and who love him.

The incident that is at the root of his court case is completely out of character with the Vincent I know. He has a strong sense of right and wrong, and while he may have been a rebellious teenager, he left that lifestyle behind a long time ago. After Vincent lost both his parents, he responded to this tragedy by growing up quickly. Today, Vincent also regularly looks after his sister, who is in poor health and needs him as well.

In our talks about his court case, and his role in what would surely be another family tragedy, Vincent has told me that he wants to stand up and take responsibility for what he has done. We've talked a lot about what his life will be like when all of this is over, and that life will be shared with the right people – his family, and the many close friends he has. I personally apologize to you on behalf of our entire family for the fact that we weren't able to deal with this ourselves, despite our great love for Vincent. In closing, I hope you will find what we all believe so very strongly – that Vincent is a good person who has a future that will be filled with healthy choices and solid contributions to his family, friends, and community. He can surely be trusted to make the most of any opportunity you may give him to start his life anew, and I respectfully ask that you grant him the chance to spend as much time as possible with his children and his family who love him.

Thank you.

Sincerely,

Daniel Henderson

**ATTACHMENT C**

                              Peter A. Pinto III
                              25 Riverdale Road
                              Billerica, MA 01821
                              June 7, 2005


The Honorable Rya Zobel
Middlesex Superior Court
Cambridge, MA 02141

Re:  Vincent Meucci

Dear Judge Zobel:

Please accept my gratitude in advance for taking time from your
schedule to read my letter regarding Vincent Meucci.  My name is
Peter A. Pinto III. And Vincent is my younger cousin.  By way of
my letter, I would like to give you some insight as to the
character of Vincent

I have known Vincent all of his life.  We grew up together in a
three family home occupied by our families.  Our parents were
all first generation immigrants who instilled in their children
the values of family, hard work, respect for people and the law.
It was a very close family, and all the children attended church
regularly as well as catholic schools.

Vincent always attended the many celebrations with the extended
family, including marriages, baptismals, graduations and
confirmations.  We were all there to support Vincent and his
siblings upon his parents' deaths

Vincent has always been supportive, caring and loving.  He was a
loving son who would help his parents around the house, as well
as drive them on Saturdays to help with errands and shopping.

We have all watched Vincent grow to be a man and, more
importantly, a father whose priorities for his family have never
changed.  Vincent has confided in me regarding the criminal
charges he is presently facing. He recognizes this wrongdoing
and accepts his responsibility for his actions and for the shame
he has brought upon our family. He has apologized on many
occasions for his actions.

**ATTACHMENT D**

Gina Rose-Meucci
1212 Oxford Lane
Naples, FL 34105

27 May 2005

Dear Judge Zobel,

I am writing this letter in reference to my former husband, Vincent G. Meucci.
As his sentencing approaches, I felt compelled to write to you and let you know
my thoughts about him and, hopefully, shed a little more light for you as to who
he is outside of your courtroom.

One of the major reasons I fell in love with Vinny was because he was so
dedicated to his family.  He grew up in a three-family household all under one
roof.  They ate together, they went to church together, they celebrated together,
and they mourned together.  Every floor and every bedroom was occupied by a
relative.  Everyone took care of each other.

Vinny's father died when he was young, so at an early age he took on a lot of
responsibilities for the day-to-day management of life in his family.  Not too long
after, his mother passed away after a very painful battle with cancer.  Vinny was
fortunate to have such a close extended family, and he viewed his friends as
members of his extended family as well.

Vinny and I married in fall of 1996, and I accepted a position teaching in Salem
while Vinny worked in sales for IRA Toyota.  Things were very nice.  We bought
our first home together in Lynnfield, and in those days we spent a lot of time
together fixing up the house and going out on the town.  Our daughter,
Adrianna, was born in 1997 and our lives were turned upside down.  Of course it
was for the best, and we both adore our children, but at the same time it was
very difficult to manage.  Vinny was working 70 hours a week, and I could only
afford to take the minimum maternity leave of three months from teaching.  It
was brutal on both of us to have to send Adrianna to childcare, but we managed.
Our son, Gino, was born in the spring of 1999.  He was 10.5 pounds and had to

be delivered by Caesarean section. Two weeks after Gino was born I had to start my Masters degree at Lesley University. The state of Massachusetts required me to obtain my degree within two years, or relinquish my teaching position, and the Masters program at Lesley took exactly two years. The pressure was on; I couldn't drop or fail a class, I was working full time, and I had two children in diapers. We sold our house and purchased one in Topsfield, so on top of everything else, we had to find the time to pack up and make a move. Somewhere in that time is when I think our ability to communicate with each other effectively was lost. We were living check by check, and each time we found out something needed to be fixed, or some unforeseen expense came up, we refinanced the house. Neither of our families were wealthy by any stretch, and Vinny and I both would have eaten cardboard than burden our families by asking them for money. Our individual frustrations ate away at our marriage, and we both hid from them by immersing ourselves in our work, our friendships, and our children.

Vinny and I didn't have many common friends, and I didn't care for many of his. They knew how important family was to Vinny, and that he considered them family, and they took advantage of it at every opportunity.

In April of 2001 we took our first trip together to Naples, Florida, to visit my parents. We fell in love with Naples, and we decided that buying a home in Naples would be the best way for us to live a slower-paced and more meaningful life together. Vinny took a sales position at a dealership there, and I was blessed with a job in one of Collier County's elementary schools. Both of us were looking forward to starting fresh. Then September 11th hit. Vinny's position dissolved, and the only thing that he could find were sales jobs. We were right back to where we started, and his frustration was so high that we decided it would be best for him to leave and go back to Massachusetts to accept a General Manager position at a dealership there.

The children were *miserable* without their father. They just adore him, and it

was hard on everyone while we finished out the school year. Vinny returned once a month at my insistence to go to marriage counseling with me and be with the kids. I can only venture to guess that it was during this separation that Vinny started down whatever path brought him to your courtroom.

The kids and I moved back to Massachusetts in May of 2002, and we bought a home in Groveland. It wasn't too long after the move that the stress, the arguing over the time he spent at work, and the demands of two working parents with pre-school aged children took over. our preschool bills were 1600.00 a month, for 5 years. It was the beginning of the end. Vinny was hanging around with all the wrong people, and I was, for all intents and purposes, a single parent. Before the end of the year, we had already talked about separation.

Instead of separating immediately, we recognized that it wasn't going to be financially feasible right away. In addition to all of that, I could see that the idea of not seeing his children was deeply troubling to Vinny. We lead separate lives except when it came to our kids. It was February of 2004 when Vinny told me that he was being investigated. I felt like I was living a nightmare, and I was livid. I knew one of the other men who was being investigated – a man Vinny felt was a good friend, and before he could even get the words out to explain I knew that Vinny had done what he does – he helps his friends when they ask him to. He didn't stop to think about how it could damage his own life, he just did it. After that I was done. I threw in the towel. I couldn't stand to watch the man I loved so deeply – the father of my children – throw his life away for some misguided notion of loyalty.

The children and I moved back to Naples last year after the school year ended. The housing market was more affordable, and the jobs were both better-salaried and more plentiful for me. The divorce, gracefully, went through quickly. However, Adrianna, and Gino have suffered the most. They miss their father desperately, and the first few moths were excruciating for them. There were

**ATTACHMENT E**

June 8, 2005

Honorable Rya W. Zobel
U.S. District Judge
United States District Court
For The District of Massachusetts

Dear Honorable Judge Zobel,

I met Vincent G. Meucci fifteen years ago. I remember what made me fall in love with him. H e offered me a piece of his toast while we were having a late night breakfast with friends. Simple but true. In that instance I knew that he was a kind and considerate person.

We dated for seven years. In those seven years I've had some of the best times of my life. He was also there at the lowest point of my life. My mother's passing was very painful. He stood by me and my family with such intensity. He was a pallbearer along side my brother's, father and uncles. It was such a comfort to my sisters and me. Having him there made something that was so surreal bearable.

Vinny is considered a part of my family. Many times he's helped my sibling's and friends never asking for anything in return...just glad to be able to help. My aunt Brenda simply adores Vinny because he makes me happy and makes me smile. Aunt Brenda's a good judge of character and always says" what a good man...if I was twenty years younger". He's a good man who's kindhearted, thoughtful, selfless and most important to me respectful.

Within the last year fate has reunited us. Through these past months Vinny has often expressed his regret in the decision he's made. He's lost a lot...his marriage and most importantly the ability to be present in his children lives. His biggest fear is how this is going to affect their future and the relationship they have.

Adrianna and Gino are the loves of his life. Without fail he stop's whatever he's doing and calls them every evening to say goodnight. Adrianna is affectionately known as, "muffin chop" and Gino as "champ". He's good father without a doubt. Although his marriage has dissolved the children are his first priority. I consider them very fortunate to have such a loving father.

He's my best friend and my greatest love. I had hoped to plan a future with him. He says not to wait, that he wouldn't ask that of me. That it would be selfish on his part to expect me to put my life on hold for his mistake. Ultimately he wants me to happy and I respect him even more for that.

This past transgression does not define his core character. Yes, he made a bad choice and my intent is not to dismiss that. None the less, a choice that has cost him his marriage, his children and now his freedom. He's been humbled by what lies ahead. He freely acknowledges and is accountable for his actions. Looking back he knows that the offense was simply bad judgment that cost him everything. He's made it clear that this will not be a path in his life again. The sacrifice is too great.

Vinny is remorseful and clearly sorry for what has happened. His actions have impacted and hurt several lives. He's determined to put his life back together. I respectfully ask the court for leniency in deciding his sentence.

Thank you in advance for your consideration.

Respectfully yours,

Pamela J. Kirby

## CERTIFICATE OF SERVICE

I, Robert N. Launie, Esq. do hereby certify and depose that on this the 10th day of June 2005, I did Hand Deliver a copy of the attached <u>Pre Sentence Memo</u> with attachments to:

Susan M. Poswistilo
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210

Jennifer Sinclair
U.S. Probation
U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

_____
Robert N. Launie, Esq.