5

III-2

## MORTGAGE AND SECURITY AGREEMENT

### ARTICLE I

**DEFINITIONS:**

The following expressions shall have the following meanings:

**DATE OF MORTGAGE
AND SECURITY AGREEMENT:** March 28, 2003

**MORTGAGOR:** David P. Veo and Daniel Veo,
Trustees of Riverhurst Realty
Trust u/d/t dated October 5, 2000,
recorded in the Land Registration
Office as Document No. 191710, with
its principal place of business
at One New England Executive Park,
Burlington, Massachusetts 01803

**LENDER:** MIDDLESEX SAVINGS BANK
6 Main Street
Natick, Massachusetts 01760

**THE MORTGAGE AMOUNT:** TWO HUNDRED AND SEVENTY-FIVE THOUSAND
($275,000.OO) DOLLARS

**THE NOTE:** A promissory note of even date herewith
given by Mortgagor to the order of
Lender in the Mortgage Amount, payable
together with interest as therein
stated; together with all renewals,
extensions and modifications of said
Note.

**THE LAND:** The land described in Schedule A
attached hereto, including all
easements, rights, privileges and
appurtenances thereunto belonging or
pertaining, and all of the right, title
and interest of Mortgagor therein and in
the streets and ways adjacent thereto,
present or contingent, now existing or
hereafter acquired.

- 1 -

THE IMPROVEMENTS:    The buildings and other structures and other improvements now or hereafter upon the Land, including all machinery, fixtures and equipment of every kind and nature whatsoever forming a part of said buildings or other structures, including, but without limitation, portable or sectional building(s), electric equipment, gas equipment, plumbing equipment, heating, air-conditioning and ventilating equipment, elevators and escalators, awnings, screens, storm doors, storm windows, blinds, shades, cabinets, stoves, disposals, refrigerators, dishwashers, floor coverings, lobby furnishings, sprinkler equipment, incinerating equipment, fire alarm systems and swimming pool and other recreational equipment, trees, hardy shrubs and perennial flowers, and also including all materials stored on the Land for incorporation into the Improvements.

THE CHATTELS:    All machinery, fixtures and equipment and other articles of personal property now or at any time hereafter attached to, placed upon, or used in any way in connection with the use, enjoyment, occupancy or operation of the Improvements, excluding, however, personal property of occupants of space within the Improvements, which personal property said occupants shall have the right to remove by the provisions of their tenancy arrangements.

THE MORTGAGED PROPERTY:    (i)    the Land;

(ii)    the Improvements;

(iii)    the Chattels;

(iv)    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidation claims including, but without limitation, proceeds of insurance provided for in Section 4.4 below and

- 2 -

proceeds of condemnation awards and awards for restriction of access to, or change of grade of, streets; and

(v)   all right, title and interest of Mortgagor in all leases, or other tenancy arrangements, now or hereafter existing, of the whole or parts of the Land and Improvements, including security deposits thereunder, in the rents payable thereunder, and in guarantees of the obligations of the lessees thereunder, in all agreements, licenses and permits affecting the Land, Improvements and Chattels, and in all other rents, issues and profits of the Land, Improvements and Chattels.

ESTATE OF BORROWER IN
THE LAND:                      Fee Simple

THE USE:                       Commercial

THE COLLATERAL
ASSIGNMENT:                    The Collateral Assignment of
                               Rents/Lease of even date herewith
                               given by Mortgagor to Lender as
                               further security for the Note.

THE LOAN DOCUMENTS:            The Note, the Collateral Assignment,
                               the Mortgage and Security Agreement
                               (hereinafter called "Mortgage"), the
                               Uniform Commercial Code Financing
                               Statements given by Mortgagor in
                               connection with the Security Agreement
                               hereby created, the Guarantys given by
                               the Guarantors of the Note, and all
                               other instruments given by Mortgagor or
                               by the Guarantors to Lender now or
                               hereafter as security for the Note or
                               in connection with the indebtedness
                               evidenced thereby.

ARTICLE II

CONCURRENT MATTERS:

        2.1 Concurrently with the execution and delivery hereof
Mortgagor has executed and delivered to Lender the Note, the
Collateral Assignment, and Uniform Commercial Code Financing

- 3 -

Statements.

## ARTICLE III

### GRANTING CLAUSE:

3.1 For consideration paid Mortgagor does hereby grant the Mortgaged Property unto Lender, with Mortgage Covenants, to secure (i) the payment of the Note (principal, interest and other sums payable thereunder) and any extension or renewal thereof, (ii) the performance and observance of all obligations and representations (hereinafter collectively called "obligations") of Mortgagor under this Mortgage, under the Note, and under all other documents given to secure the Note, and (iii) the payment of all other indebtedness, from time to time, of Mortgagor to Lender.

3.2 Lender and its successors and assigns and any of them, as the context admits, are herein called "Holder." The expression "Mortgagor" as used herein, shall mean the Mortgagor named herein and all successors to the interest of Mortgagor named herein and each of them, except only as expressly otherwise provided herein; but Holder shall not be required at any time to recognize as Mortgagor any person unless and until Holder shall receive evidence satisfactory to it that such person holds Mortgagor's interest.

## ARTICLE IV

### REPRESENTATIONS, AGREEMENTS AND CONDITIONS:

4.1 Mortgagor will pay all sums secured hereby promptly as and when the same become due and payable.

4.2 Mortgagor lawfully holds its estate in the Mortgaged Property set forth in Article I, free from encumbrances, except those encumbrances set forth in Schedule A, and has good right and power to transfer the Mortgaged Property to Holder for the uses and purposes in this Mortgage set forth; and Mortgagor shall and will warrant and defend its said title to Holder forever against the claims and demands of all persons whatsoever.

4.3 (a) Mortgagor will pay, at least ten (10) days prior to the last day when the same shall be payable without interest or late charge (and will provide by such time evidence of such payment satisfactory to Holder), all taxes, assessments and governmental charges of every type or nature, to whomever

- 4 -

assessed, imposed upon or against the Mortgaged Property or any part thereof, or upon the rents, issues and profits therefrom, or upon the lien or estate created hereby, or arising in respect of the occupancy, use or possession of the Mortgaged Property, including, without limitation, real and personal property taxes, taxes on rents, betterments assessments, permit and license fees, and water and sewer charges. Nothing in this subsection shall extend to any income tax or corporation excise tax of Holder.

        (b) At the time of each payment of an installment of interest or principal under the Note, Mortgagor shall deposit with Holder an additional amount sufficient to discharge the obligations under subsection (a) above when they become due. The determination and redetermination, from time to time, of the amounts so to be deposited with the Holder, so that the aggregate of such amounts deposited shall be sufficient for this purpose, shall be made by Holder in its sole discretion. No trust shall be created by such deposits and the amounts so deposited may be commingled with other funds of Holder and shall be held by Holder without interest and applied to the payment of the obligations in respect to which such amounts were deposited or, at the option of Holder, to the payment of said obligations in such order of priority as Holder shall determine, on or before the respective dates on which the same or any of them would become delinquent, or, to the extent permitted by law, to the payment of any other obligation secured by this Mortgage. If one (1) month prior to the due date of any of the aforementioned obligations the amounts then on deposit therefor shall be insufficient for the payment of such obligation in full, Mortgagor, within ten (10) days after demand, shall deposit the amount of the deficiency with Holder. Nothing herein contained shall be deemed to affect any right or remedy of Holder under Article VII.

        (c) Mortgagor will not permit to exist any mechanics', materialmen's or laborers' liens upon the Mortgaged Property or any part thereof. None of the Chattels will be subject to any conditional sales agreement, chattel mortgage, lease or use agreement or other security interest except only the security interest of Holder therein.

        (d) Mortgagor will keep the Mortgaged Property free of any claim, lien or encumbrance which may be or become prior to this Mortgage.

        (e) Nothing in this Section 4.3 shall require the payment or discharge of any obligation imposed upon Mortgagor by this Section so long as Mortgagor shall, in good faith and at its own expense, contest the same, or the validity thereof, by appropriate legal proceedings which shall operate to prevent the

collection thereof, or other realization thereupon, or the sale
or forfeiture of the Mortgaged Property, or any part thereof, to
satisfy the same; provided that Mortgagor shall give notice to
Holder of such contest prior to such contest and at all times
during such contest Mortgagor shall, at the option of Holder,
provide security satisfactory to Holder, assuring the discharge
of Mortgagor's obligation hereunder and of any additional charge,
penalty or expense arising from or incurred as a result of such
contest.

        4.4 (a) Mortgagor will keep the Improvements and Chattels
insured against loss by fire, the perils against which insurance
is afforded by the Extended Coverage endorsement, vandalism and
malicious mischief, and such other risks and perils as may be
specified by Holder, including, without limitation, rent
insurance and flood insurance. Mortgagor shall deliver policies
of such insurance to Holder forthwith, and a renewal of each
expiring policy at least fifteen (15) days prior to the
expiration date. Such insurance shall be written in forms,
amounts and by companies satisfactory to Holder, and losses
thereunder shall be payable to Holder pursuant to a
loss-payable-to-mortgagee clause standard in the State in which
the Land lies. Such insurance shall provide that the same shall
not be cancelled or amended as to Holder, unless Holder shall
have received notice of such cancellation or amendment at least
sixty (60) days prior to the date designated in said notice as
the effective date of cancellation or amendment. Such insurance
shall provide that any waiver in writing by the insured prior to
loss of any or all rights of recovery against any party for loss
shall not affect the validity of the insurance or the right of
recovery thereunder. Such insurance shall provide that the same
shall be payable to Holder notwithstanding any defense the
insurer may have to the payment of the same to Mortgagor or to
any person holding any other interest in the Mortgaged Property.
Also, if the insurer shall have had a defense to the payment of
any insurance proceeds to Mortgagor, but shall have paid the same
to Holder, any interest the insurer shall have in the Mortgaged
Property as security for the repayment of said proceeds shall be
fully subordinated to the interest of Holder in the Mortgaged
Property. Mortgagor shall not maintain any insurance upon the
Mortgaged Property against fire or other casualty unless the loss
thereunder shall be payable to Holder in the manner aforesaid.
Upon foreclosure of this Mortgage any prepaid insurance then
outstanding shall become the absolute property of Holder.
Mortgagor authorizes Holder, at its option, to adjust and
compromise any losses under such insurance for and on behalf of
Mortgagor, and any such adjustment and compromise shall be
binding on Mortgagor.

(b) Mortgagor shall give Holder prompt notice of any damage to the Mortgaged Property by fire or other casualty.

(c) The net proceeds of any such insurance shall, at the option of Holder, be used in any one or more of the following ways: (1) applied to the indebtedness secured hereby, matured or unmatured, (2) used to perform any obligations of Mortgagor hereunder as Holder may determine, (3) used to repair or restore the Mortgaged Property as Holder shall require, or (4) released to Mortgagor.

(d) Mortgagor will also cause appropriate public liability insurance to be maintained in such amounts as Holder shall request and shall deliver to Holder evidence of such insurance.

4.5 Mortgagor will maintain the Mortgaged Property in good order, condition and repair, damage from casualty expressly not excepted, promptly replacing any items of the Mortgaged Property which may become lost, destroyed or unsuitable for use with other property of similar character. Mortgagor will not permit or commit any waste of the Mortgaged Property, will comply with all laws, ordinances, regulations, agreements, conditions and restrictions affecting the Mortgaged Property and will not permit any violation thereof. Mortgagor will not permit any condition to exist which would wholly or partially invalidate any insurance upon the Mortgaged Property or create any extra premiums therefor. Mortgagor will not permit any buildings to be removed or altered, or any additions to be made to any existing buildings, or any new buildings to be erected, unless Holder shall first consent thereto in writing. Mortgagor shall maintain and preserve parking areas, driveways and other public areas upon the Mortgaged Property as shown on final plans approved by Holder, and, without the prior written consent of Holder, no new buildings or other structures shall be erected on said parking areas, driveways or other public areas and no new buildings or additions to existing buildings shall be erected on the Mortgaged Property. For the purposes hereof, the restoration of buildings damaged by fire or other casualty (including taking by eminent domain) shall not be deemed to be an erection of a new building or an addition to an existing building.

4.6 (a) Mortgagor shall operate the Land and Improvements for the Use set forth in Article I. If, at any time, the then existing use or occupancy of the Mortgaged Property or any part thereof shall, pursuant to any applicable zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of Holder.

- 7 -

(b) Mortgagor shall cause the Land and Improvements to be operated in compliance with all restrictions, encumbrances or agreements affecting said Land and Improvements and with all zoning and building codes and other applicable laws, ordinances, rules and regulations of all public authorities having jurisdiction.

4.7  Mortgagor will perform and observe all obligations of Mortgagor under all lease or other tenancy arrangements or other agreements, licenses or permits from time to time affecting the Mortgaged Property or any part thereof.  Mortgagor shall use reasonable diligence to enforce the obligations of the other parties to said leases and other agreements.  Mortgagor will not accept any rents for any period more than one (1) month in advance.

4.8  (a) Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Mortgaged Property and will permit Holder and its representatives to examine said books and records, and all supporting vouchers and data, at any time and from time to time upon request by Holder.

(b) Mortgagor (i) shall deliver to Holder within ninety (90) days after the close of each fiscal year of Mortgagor complete copies of their Federal Income Tax Return, and a statement of financial condition of the Mortgagor, in form and substance reasonably satisfactory to the Holder, (ii) a financial statement on the Mortgaged Property, including an itemized statement of income and expenses with respect to the Mortgaged Property, and (iii) shall cause each of the Guarantors (if any) to deliver to Holder within ninety (90) days after the close of their respective fiscal years personal financial statements.  All of the foregoing shall be in form and substance reasonably satisfactory to the Holder.  In addition, the Mortgagor will provide the Holder with such financial information as the Holder may reasonably request from time to time.

4.9  (a) Mortgagor will, at its own cost, execute and deliver such further instruments and do such further acts as Holder shall, from time to time, require to correct any defect, error or omission herein or better to assure to Holder in the property and rights transferred to Holder hereunder, in particular, and without limitation:

(1) To carry out the transfer to Holder, as security, of so much of the Mortgaged Property as is described in subdivision (iv) under the definition of Mortgaged Property, Mortgagor appoints Holder its attorney-in-fact to collect and

- 8 -

receive any such proceeds from the authorities or entities paying the same, to appear in any proceeding therefor, and to give receipts and acquittances therefor; and Mortgagor will execute and deliver to Holder, on demand, such assignments and other instruments as Holder may require for said purposes and will reimburse Holder for its costs (including reasonable counsel fees) in the collection of such proceeds.

(2) To carry out the transfer to Holder, as security, of so much of the Mortgaged Property as is described in subdivision (v) under the definition of Mortgaged Property, Mortgagor agrees (a) to execute and deliver to Holder such conditional assignments of leases and other tenancy arrangements of portions of the Mortgaged Property and rents payable thereunder as Holder may, from time to time, request and (b) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or other tenancy arrangements or consent to any assignment or subletting thereof, in whole or in part, without Holder's written consent. Nothing herein shall obligate Holder to perform the obligations of Landlord under any such leases or other tenancy arrangements, which obligations Mortgagor shall perform. Holder shall have the right, by the execution of suitable written instruments, from time to time, to subordinate this Mortgage and the right of Holder to any lease or leases, from time to time, in force with reference to the Mortgaged Property, and, on the execution of any such instrument, this Mortgage shall be subordinate to the lease for which such subordination is applicable with the same force and effect as if such lease had been executed and delivered prior to the execution, delivery and recording of this Mortgage.

(b) Mortgagor will cause this Mortgage and all instruments of further assurance and all financing and continuation statements required by the applicable provisions of the Uniform Commercial Code at all times to be kept, recorded and filed in such places as in the opinion of Holder's counsel may be required to preserve and protect fully the rights of Holder. In addition to paying all fees and expenses in connection with the foregoing, Mortgagor will pay all stamp taxes and other taxes and charges in connection with the Note, the Mortgage, the Uniform Commercial Code Financing Statements and all instruments of further assurance. Holder may, at its election, accomplish such recordings and filings and such payment of such taxes and charges, for the account of Mortgagor, and, in such event, Mortgagor shall reimburse Holder, from time to time, within ten days after demand is made therefor, for the costs and expenses of Holder in so doing.

4.10 Any transfer, mortgage or pledge of the interest, or any part of the interest, in the Mortgaged Property of Mortgagor

- 9 -

or any Guarantor of the obligations of Mortgagor, without the
written consent of Holder, voluntarily or involuntarily, or by
operation of law, shall be a default under this Mortgage. Any
consent to any one transfer, mortgage or pledge and shall be
deemed a consent only to said one transfer, mortgage or pledge
and shall not be a waiver of the requirement of consent to any
further transfer, mortgage or pledge. If Mortgagor's rights
become vested in a person other than Mortgagor named herein,
Holder may, without notice to Mortgagor named herein, deal with
such person to extend or modify this Mortgage or the payments
hereunder or the indebtedness secured hereby, or release part of
the Mortgaged Property without releasing or diminishing the
liability or obligation of Mortgagor named herein.

4.11 Holder shall have the right to enter upon and inspect
all parts of the Mortgaged Property at all reasonable times.

4.12 In the event the Mortgaged Property or any part
thereof shall be taken by right of eminent domain, or access to
any street shall be restricted, or the grade of any street shall
be changed, awards of damages therefor shall be paid to Holder.
Such awards shall, at the election of Holder, be used in any one
or more of the following ways:   (1) applied to the indebtedness
secured hereby, matured or unmatured, (2) used to perform any
obligation of Mortgagor hereunder as Holder may determine, (3)
used to repair or restore the mortgaged Property as Holder may
require or (4) released to Mortgagor.

4.13 So long as Mortgagor is not in default under this
Mortgage, the Note, or any other obligation of Mortgagor to
Holder, rents payable by occupants of portions of the Land and
Improvements shall be payable to Mortgagor, but upon notice by
Holder to any such occupant that Mortgagor is in default, rents
payable by such occupant shall become payable to Holder without
any obligation on the part of any such occupant to inquire
whether default has, in fact, occurred.  Holder shall have the
right to apply rents received to the indebtedness secured hereby,
matured or unmatured.  Holder may demand, sue for and recover
such rents, but shall not be obligated to do so.  Nothing herein
shall be construed as approval by Holder of any lease, other
tenancy arrangement, agreement, license or permit, and nothing
herein shall obligate Holder to perform any obligations of
Mortgagor under any of said leases, other tenancy arrangements,
agreements, license or permits, which obligations Mortgagor
agrees to perform punctually.

4.14 Receipt of any insurance proceeds, condemnation
awards, rents or other moneys or evidences thereof as aforesaid
and any disposition thereof by Holder shall not constitute a
waiver of any rights of Holder, statutory or otherwise, and

specifically shall not constitute a waiver of the right of foreclosure by Holder in the event of any failure of performance of any obligation of Mortgagor hereunder, under the Note, or other evidence of indebtedness given by Mortgagor to Holder.

4.15  If this Mortgage, by its terms, is now, or at any time, subject or subordinate to a prior mortgage, Mortgagor shall not, without the consent of Holder, agree to the modification, amendment, or extension of such prior mortgage, and Mortgagor will perform all obligations of Mortgagor under such mortgage.

4.16 Mortgagor agrees to pay, when due, all reasonable fees and expenses incurred incident to the loan transaction evidenced by the Note and secured by this Mortgage, the assurance of the security represented by this Mortgage, and incident to the enforcement of the Note and this Mortgage, including, without limitation, reasonable attorneys' fees and expenses and brokers' commissions, if any.

4.17  If Holder shall be made party to any action by reason of the execution of this Mortgage or the Note, or in which the priority of the lien of this Mortgage shall be challenged, Mortgagor shall reimburse to Holder, immediately upon demand, all sums of money paid by Holder to defend said action and uphold the lien created hereby.

4.18  If the United States, or any department or bureau thereof, shall determine that this Mortgage shall be challenged, Mortgagor shall reimburse to Holder, immediately upon demand, all sums of money paid by Holder to defend said action and uphold the lien created hereby.

4.19  If Mortgagor shall be Trustees of a Trust, the Trustees hereby certify, pursuant to the provisions of said Trust, that said Trust is in full force and effect, that said Trust has not been amended and that they are the sole Trustees of said Trust.

4.20  Mortgagor is duly authorized to carry on its business as presently conducted and to make and enter into the Loan documents and to carry out the transaction contemplated therein.  The Loan documents have each been duly executed and delivered by Mortgagor, and each is a legal, valid and binding obligation of Mortgagor, enforceable in accordance with its terms.

4.21 Mortgagor is not now in default under any instruments or obligations relating to the Mortgaged Property and no party has asserted any claim of default relating to the Mortgaged Property.  The execution and performance of the Loan documents

- 11 -

and the consummation of the transactions thereby contemplated
will not result in any breach of, or constitute a default under,
any contract, mortgage, lease, bank loan or credit agreement,
trust indenture or other instrument to which Mortgagor is a party
or by which Mortgagor may be bound or affected and do not violate
or contravene any law, order, decree, rule or regulation to which
Mortgagor is subject; nor do any such instruments impose or
contemplate any obligations which are or will be inconsistent
with any other instruments heretofore or hereafter delivered by
Mortgagor.

4.22 The Improvements shall be completed and installed in
a good and workmanlike manner, in accordance with all applicable
governmental laws, regulations and requirements.  The
Improvements are served by electric, gas, sewer, water and other
utilities required for the use and operation thereof.  Any and
all streets and other off-site improvements necessary for the use
and operation of the Mortgaged Property have been completed, are
serviceable, and have been accepted or approved by applicable
governmental bodies.  The Mortgaged Property complies with all
applicable federal, regional, state and local laws, ordinances,
regulations, requirements and the like.

4.23 There are no actions, suits or proceedings including,
without limitation, condemnation, insolvency and bankruptcy
proceedings, pending or threatened, against or affecting
Mortgagor or the Mortgaged Property, or which may involve or
affect the validity or enforceability of the Loan Documents at
law or in equity, or before or by any governmental authority
except actions, suits and proceedings fully covered by insurance.
Mortgagor is not in default with respect to any order, writ,
injunction, decree or demand of any court or any government
authority affecting Mortgagor or the Mortgaged Property.

4.24  All statements, financial or otherwise, submitted
to Lender in connection with this transaction are true and correct
in all respects, and with respect to the financial statements
have been prepared in accordance with generally accepted
accounting principles consistently applied and fairly present the
financial condition of the parties or entities covered by such
statements as of the date thereof, and no additional borrowings
have been made by such parties or entities, or any of them, since
the date thereof, nor have Mortgagor or the Mortgaged Property
experienced a material adverse change since the date thereof.
Mortgagor is now in a solvent condition.

4.25  If the laws now in force for the taxation of
mortgages or of debts secured by mortgages (including, without
limitation, laws exempting from taxation amounts invested in
Mortgages) shall be changed to the detriment of Holder, then

Holder may, at its election accelerate the maturity of the Note, and upon the exercise of such election the maturity will be accelerated, unless within ninety (90) days after Mortgagor shall receive notice of acceleration of the maturity for said reason, Mortgagor, if permitted by law, shall pay the additional tax for which Holder shall have become liable.

## ARTICLE V

### PERSONAL PROPERTY SECURITY AGREEMENT:

5.1 Mortgagor agrees that this Mortgage shall constitute a security agreement with respect to the Chattels and other personal property that is a part of the Mortgaged Property and Mortgagor does hereby convey to Holder a security interest therein.  Holder shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the State in which the Land lies and such further remedies as may, from time to time, hereafter be provided in said State for a secured party with respect to both said personal property security and any personal property security that may hereafter be given as further security for the indebtedness secured by this Mortgage; provided, however, that nothing herein shall preclude Holder from proceeding both as to personal property security and real estate security in accordance with Holder's rights and remedies in respect of real estate security.

## ARTICLE VI

### MISCELLANEOUS:

6.1  Without affecting the liability of Mortgagor or any other person obligated therefor (except any person expressly released in writing) for the payment of any indebtedness secured hereby or for performance of any obligation contained herein, and, without affecting the rights of Holder with respect to any security not expressly released in writing, Holder may, at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a) Release any person liable for the payment of all or any part of the indebtedness or for the performance of any obligation.

(b) Make any agreement extending the time, or otherwise altering the terms of payment of, all or any part of the indebtedness, or modifying or otherwise dealing with the lien or charge hereof.

- 13 -

(c) Exercise, refrain from exercising or waive any right Holder may have.

(d) Accept additional security of any kind.

(e) Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the Mortgaged Property.

6.2  No consent or waiver by Holder to or of any default by Mortgagor shall be construed as a consent or waiver to or of any further default in the same or any other term, condition, covenant or provision of this Mortgage or of the obligations secured hereby.

6.3  Any agreement hereafter made by Holder with Mortgagor pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

6.4  No delay by Holder in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

6.5  Any notice shall be deemed duly given by any sender to an addressee (i) if delivered personally to said addressee against a receipt thereof signed by said addressee or an agent of said addressee or (ii) if mailed to said addressee by registered or certified mail, postage prepaid, return receipt requested, at the "Notice Address" of said addressee.  The time of the giving of any notice shall be the time of receipt thereof by the addressee or an agent of the addressee, except that in the event the notice mailed as above provided shall not be received upon delivery thereof to the Notice address because of a refusal of receipt, the absence of a person to receive or otherwise, the time of the giving of such notice shall be the time of such delivery.  The Notice Address of Holder shall be set forth in Article I and the Notice Address of Mortgagor shall be as set forth in Article I, but, if the sender of any notice to any addressee shall have previously been given notice by said addressee of a change of address of said addressee, such changed address shall thereafter as to such sender be deemed the Notice Address of said addressee.

6.6  If any one or more of the provisions contained in this Mortgage, or in the Note, or in any other document between Holder and Mortgagor relating to the indebtedness secured hereby shall, for any reason, be held to be invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect

- 14 -

any other provision of this Mortgage; but this Mortgage shall be construed as if such invalid or unenforceable provision did not exist. Also, if any provision shall be held "usurious" under applicable law, the rate of interest provided shall be reduced to such rate that usury shall be eliminated.

6.7 If more than one person shall be named in this Mortgage as Mortgagor, the liability of said persons shall be joint and several. The representations and agreements made by any party hereto shall be binding upon said party and his heirs, executors, administrators, successors and assigns; and the representations and agreements made to any party, the conditions for the benefit of said party and the rights and remedies of said party shall inure to the benefit of the heirs, executors, administrators, successors and assigns of said party. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

## ARTICLE VII

DEFAULT:

7.1 If Mortgagor shall fail to perform any obligation of Mortgagor hereunder, including, without limitation, any obligation under Article IV, then Holder may, at its election, perform such obligation for the account of Mortgagor with right of subrogation thereunder. In connection therewith Holder may advance such sums of money as Holder shall deem advisable, without responsibility with respect to the legality, validity or priority of any claim, lien or tax or the amount necessary to be paid to satisfy the same. Holder shall be subrogated, for further security, to the lien, although released of record, of any lien discharged by a payment by Holder. Mortgagor shall pay to Holder, immediately upon demand, all sums of money advanced by Holder pursuant to this Section, together with interest from the date of payment at the highest rate of interest provided in the Note, and all such advances plus interest shall be secured hereby. No such advance shall be deemed to relieve Mortgagor from any default hereunder or impair any right or remedy of Holder in the event of default of Mortgagor.

7.2. The following shall be Events of Default hereunder:

(a) A default in the payment, when due, of any indebtedness secured hereby.

(b) A default in the performance of any of the Mortgagor's obligations under this Mortgage, the Note or any

- 15 -

other instrument given as security for, or in connection with, said indebtedness, or any event stated herein to be a default under this Mortgage.

(c) If Mortgagor, any maker of the Note or any Guarantor of the obligations of Mortgagor shall file a petition in bankruptcy or for reorganization, arrangement, composition, readjustment, liquidation, dissolution or other relief of the same or different kind under the provisions of the Bankruptcy Act; or if such a petition shall be filed against Mortgagor, any maker of the Note or said Guarantor and shall not be dismissed within sixty (60) days after such a filing.

(d) If Mortgagor, any maker of the Note or any Guarantor of the obligations of Mortgagor is adjudicated as bankrupt, or insolvent, or makes an assignment for the benefit of creditors, or if any petition or other proceeding is filed by Mortgagor, any maker of the Note or said Guarantor for appointment of a trustee, receiver, guardian, conservator or liquidator of all, or substantially all, of Mortgagor's, said maker's or said Guarantor's property; or if such a petition or other proceeding shall be filed against Mortgagor, maker or said Guarantor and shall not be dismissed within sixty (60) days after such filing.

(e) Any representation or warranty made by Mortgagor herein or in any of the Loan documents which shall be misleading, untrue or unfulfilled.

7.3    So long as any Event of Default shall exist, then Holder, in addition to, and not in limitation of, any and all other rights or remedies available to it by law or by any other provision of any of the instruments given to secure the Note, shall have the right, without notice:

(a) To enter upon and take possession of the Mortgaged Property or any part thereof, and to perform any acts Holder shall deem necessary or proper to conserve the Mortgaged Property (including, without limitation, the making of repairs, replacements and alterations), to manage and operate the Mortgaged Property, to collect and receive all rents, issues and profits from the Mortgaged Property, past due and thereafter accruing, and to exercise all other rights of Mortgagor with respect to the Mortgaged Property.

(b) To have a receiver appointed to enter and take possession of the Mortgaged Property or any part thereof, and to perform any acts said receiver shall deem necessary or proper to conserve the Mortgaged Property, (including, without limitation, the making of repairs, replacements and alterations), to manage

and operate the Mortgaged Property, to collect and receive all rents, issues and profits from the Mortgaged Property, past due and thereafter accruing, and to exercise all other rights of Mortgagor with respect to the Mortgaged Property.

(c) To accelerate the maturity of the indebtedness secured by this Mortgage.

(d) To sell the Mortgaged Property at public auction on or near the Land and upon such terms and conditions as Holder shall determine, having first given such notice, prior to the sale, of the time and place of sale and terms and conditions of sale by publication in one or more newspapers having a general circulation in the municipality in which the Land is located, all subject, however, to the requirements of this Mortgage and applicable law, or to foreclose this Mortgage in any other manner permitted by law.

(e) To obtain judgment and execution for the indebtedness secured by this Mortgage, to the extent not otherwise satisfied.

7.4 (a) If Holder shall exercise the right described in either subdivision (a) or subdivision (b) of Section 7.3, the expenses (including without limitation, receiver's fees and counsel fees) incurred pursuant to the powers herein contained shall be secured hereby.  Holder shall apply such rents, issues and profits as shall be received by it first to the payment of all costs and expenses incurred and thereafter to the indebtedness secured hereby in such order of priority as Holder in its sole discretion shall determine; and the exercise of such rights and disposition of such funds shall not constitute a waiver of commencement of foreclosure for breach hereof.

(b) Mortgagor agrees that all rights of Holder as to personal property security and real estate security may be exercised together or separately and further agrees that, in exercising its power of sale, Holder may sell the personal property security or any part thereof either separately from, or together with, the real estate security or any part thereof, in such order as Holder may, in its discretion, elect, and whether or not the aggregate proceeds thereof exceed the indebtedness secured by this Mortgage.  At any sale, any combination of or all of the security may be offered for sale for one total price and the proceeds of such sale accounted for in one account without distinguishing between the items of security or assigning to the separate securities proportions of the proceeds of such sale accounted for in one account without distinguishing between the items of security of assigning to the separate securities proportions of the proceeds; and, in case Holder, in the exercise

- 17 -

of the power of sale herein given, elects to sell in parts or
parcels, said sales may be held from time to time and the power
shall not be fully executed until all of the personal property
security and real estate security not previously sold shall have
been sold.

(c) If Holder shall exercise the right described
in subdivision (d) of Section 7.3, Holder may adjourn from time to
time any sale by announcement of such adjournment at the time and
place appointed for such sale or such adjourned sale;  and,
except as otherwise provided by law, Holder may, without further
notice or publication, make such sale at the time and place to
which the same shall be so adjourned.  Upon completion of any
sale, Holder shall execute and deliver an instrument conveying,
assigning and transferring all right, title and interest in the
property and rights sold, in the name of Holder or in the name of
Mortgagor, and the same shall operate to divest all right, title
and interest of Mortgagor in any property or right so sold and
shall be a perpetual bar, both at law and in equity, against
Mortgagor and all persons claiming under Mortgagor.

(d) The rights and remedies of Holder for any
default under any of the instruments given as security for, or in
connection with, the indebtedness secured hereby are not mutually
exclusive, and may be exercised successively or concurrently and
from time to time for as long as any default exists.  The failure
of Holder to exercise any such rights in any one or more
instances, or the acceptance by Holder of partial payments of
amounts in default secured hereby, shall not constitute a waiver
of such default, but such right shall remain continuously in
force.  Acceleration of maturity, once claimed hereby by Holder,
may, at its option, be rescinded by written acknowledgment to
that effect without waiving the default or any rights, including
the right to accelerate again, with respect thereto.  The tender
and acceptance of partial payment of amounts in default after
acceleration, or the commencement of any foreclosure action,
shall not in any way affect, rescind or terminate such
acceleration of maturity or such foreclosure action.

7.5  In case redemption is had by Mortgagor after
foreclosure proceedings have begun, Holder shall be entitled to
collect all costs, charges and expenses incurred up to the time
of redemption;  and, in case of foreclosure sale, Holder shall be
entitled to retain one percent (1%) of the purchase money in
addition to the costs, charges and expenses allowed by law.  If
the debt secured hereby shall not be paid when due, Holder may
require thirty (30) days notice in writing before payment,
unless foreclosure proceedings have begun.

7.6 This Mortgage is upon the Statutory Condition and

upon the further condition that all obligations of Mortgagor
herein shall be kept and fully and seasonably performed.  For any
breach of any of said conditions Holder shall have the Statutory
Power of Sale in addition to any other remedies for breach herein
contained or by law permitted.

            IN WITNESS WHEREOF, Mortgagor has executed this
Mortgage under seal as of the day and year first above written.

RIVERHURST REALTY TRUST
(the "Borrower" or "Mortgagor")


By: _____          By: _____
    David P. Veo, Trustee                 Daniel Veo, Trustee


                    COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

     On this 28th day of March, 2003, before me personally
appeared David P.  Veo and Daniel Veo, to me personally known,
who being by me duly sworn (or affirmed), did say that they
are the sole Trustee of the foregoing Riverhurst Realty Trust,
and that the within Mortgage and Security Agreement was signed
and sealed in behalf of said Trust and said David P.  Veo and
Daniel Veo acknowledged said instrument to be their free act
and deed and the free act and deed of said Trust.


                              _____
                              Notary Public
                              My Commission Expires:
                                   HENRY J. DAME
                                   NOTARY PUBLIC
                                   MASSACHUSETTS
                                   COMM. EXP. 01-23-2009

/msb/riverhurst.mort



cl. 8090

                            - 19 -

## EXHIBIT A

That certain parcel of land situate in Billerica in the
County of Middlesex and said Commonwealth, bounded and
described as follows:

Southeasterly by Main Road, one hundred eighty-three and
50/100 (183.50) feet;

Southwesterly four and 79/100 feet, and

Northwesterly one hundred forty-nine and 7/100 (149.07) feet,
by Lot E;

Northwesterly again by Lot 324, one hundred fifty-one and
98/100 (151.98) feet; and

Northeasterly by Lot 62A, one hundred eleven and 90/100
(111.90) feet.

All of said boundaries are determined by the Land Court to be
located as shown on subdivision plan 2792-S, drawn by James
B. Monahan, Surveyor, dated November 10, 1958, as approved by
the Court, filed in the Land Registration Office, a copy of a
portion of which is filed with Certificate of Title 11445,
and said land is shown as Lot three hundred twenty-five (325)
on said plan.

Also another certain parcel of land situate in said Billerica,
bounded and described as follows:

Southeasterly by Main Road, sixty (60) feet;

Southwesterly by Lot 63, one hundred eleven and 90/100
(111.90) feet;

Northerly by Lot 62B, one hundred six and 14/100 (106.14)
feet; and

Southeasterly by the junction of Riverhurst and Main Roads,
by a curved line, ninety-two and 41/100 (92.41) feet.

All of said boundaries are determined by the Land Court to be
located as shown on subdivision plan 2792-M, drawn by C. B.
Humphrey, Engineer for Court, dated Jan. 31, 1946, as approved
by the Court, filed in the Land Registration office, a copy

- 1 -

**6**

## COMMERCIAL LEASE

This lease, made and entered this day 29th of August, 1991, by and between Lawrence G. Trebino, as trustee of the Trinda Realty Trust, under Declaration of Trust, dated January 1, 1964, recorded at the Middlesex Southern District Registry of Deeds, as Document Number 77335 in the Land Registration Office, of Lexington, Middlesex County, Massachusetts (hereinafter referred to as the "Lessor") and AMR Corporation, a Massachusetts corporation, of Boston, Suffolk County, Massachusetts (both hereinafter referred to as the "Lessee"), which shall become effective September 1, 1991.

IN CONSIDERATION of the mutual promises and covenants hereinafter contained, it is agreed by and between the parties hereto as follows:

1.   That Lessee hereby agrees to lease the property of Lessor situated at 251 Old Concord Road in the town of Billerica, Middlesex County, Massachusetts described more accurately in the attached "Exhibit A" (hereinafter referred to as the "Premises") including all of the structures, improvements, buildings, and equipment on or in the Premises as is together with any right to use in common, with others entitled thereto, the indentures or easements necessary for access to the Premises.

2.   The term of this lease shall be for a period of five (5) years commencing on September 1, 1991 and ending on August 31, 1996.   Provided that the Lessee is not in default under this lease or any extension or renewal thereof beyond any applicable grace

1/1/91 – 8/31/96
1/96 – 8/31/01
/31/2011

period, then **Lessee** shall have the option to extend its leasehold interest in the Premises for three additional terms of five (5) years each. **Lessee** shall give to **Lessor** one hundred and twenty (120) days notice of its intention to renew or extend this lease or any renewal or extension subsequently made thereof.

3.  **Lessee** shall pay to **Lessor**, to the address and place hereafter set forth in this agreement, rent in the monthly payments on the 1st day of each and every month during the term hereof as follows:

From September 1, 1991 through August 31, 1996, the sum of $27,408.00 per annum rent in equal payments of $2,284.00 per month for the five year period;

From September 1, 1996 through August 31, 1997, the sum of $28,608.00 rent in equal monthly payments of $2,384.00;

From September 1, 1997 through August 31, 1998, the sum of $29,808.00 rent in equal monthly payments of $2,484.00;

From September 1, 1998 through August 31, 1999, the sum of $31,008.00 rent in equal monthly payments of $2,584.00;

From September 1, 1999 through August 31, 2000, the sum of $32,208.00 rent in equal monthly payments of $2,684.00;

From September 1, 2000 through August 31, 2001, the sum of $33,408.00 rent in equal monthly payments of $2,784.00.

If **Lessee** exercises its option to renew or extend this lease or any subsequent renewal or extension the rent shall increase by an additional $1,200.00 per year for each year which this lease is renewed or extended.

For each day that **Lessee** is late with the payment of a monthly

rent installment, it shall be assessed a $15.00 per day late charge after the seventh (7th) day passes and no rent is received by Lessor. In the event that any rent check tendered by Lessee is not honored by Lessee's bank, then Lessee shall pay Lessor the sum of $100.00 per day for each day that passes, after written notice is sent by Lessor which shall state that Lessee's bank will not honor the said check, until said rent is paid with sufficient funds.

4.   If in any tax year commencing with fiscal year 1991, the real estate taxes on the land and building, of which the Premises are part, are in excess of the amount of the real estate taxes thereon for the fiscal year 1990 (hereinafter called the "Base Year"), Lessee will pay to Lessor as additional rent hereunder, when and as designated by notice in writing by Lessor, 100% of such excess that may occur in each year of the term of the lease or any extension or renewal thereof and proportionate share for any part of any fiscal year.  This additional rent shall be due and payable to Lessor fifteen (15) days after the receipt of a copy of the tax bill or invoice issued by the taxing authority.

If Lessor obtains an abatement of any such excess real estate tax, a proportionate share of such abatement, less the reasonable fees and costs, as well as attorney fees, incurred in obtaining same, if any shall be refunded to Lessee.  Lessee shall have the right to file for any such tax abatement at Lessee's sole expense, but shall first notify Lessor of such intention.

5.   Lessee shall pay, as they become due, all bills or invoices for electricity, heat, water, sewer, gas, telephone, and

any utility service or communication service used in or rendered or supplied to the Premises throughout the term of this lease, and to indemnify and hold Lessor harmless against any liability or damages on any such bill, invoice or account. In the event that Lessee is more than thirty (30) days late, after the date which the water and sewer billing is due and owed, in remitting payment for said billing, then Lessor shall have the right to send a letter to the Town of Billerica Water and Sewer Department requesting that said department shall shut off the water and sewer service to the Premises. All costs of the shut off and resumption of service shall be the full and sole responsibility of Lessee.

6.  Lessee shall use the Premises only for the purpose of the operation of a restaurant and lounge, or other legal business.

7.  Lessee acknowledges that no trade, commerce, occupation, or activity shall be conducted in or upon the Premises, or use made thereof, which is or will be unlawful, improper, or contrary to any law or regulation of the Commonwealth of Massachusetts or any municipal by-law or ordinance in force in the Town of Billerica, Middlesex County, Massachusetts.

8.  Lessee shall not permit any use of the Premises which will make voidable any insurance on the property of which the Premises are part, or on the contents of said property or which shall be contrary to any law or regulation from time to time established by the New England Fire Insurance Rating Association, or any similar body succeeding to its power.

4 of 13

9.   Lessee agrees to maintain the Premises in good condition, damage by fire or other casualty and that of reasonable wear and tear excepted, and wherever necessary, to replace plate glass and other glass therein.  Lessee shall not permit the Premises to be overloaded, damaged, stripped, or defaced, nor suffer any waste. Lessee shall obtain prior written consent of the Lessor before erecting any additional sign or signs on or upon the outside of the Premises.  Lessee shall be solely responsible for the maintenance and upkeep of all equipment and appliances upon the Premises whether found inside or on the outside of any building or structure.

Lessor agrees to maintain the structure of the building of which the Premises are a part in the same condition as now in during the term of the lease, reasonable wear and tear, damage by fire or other casualty excepted, unless such maintenance is required because of the Lessee or those for whose conduct Lessee is legally responsible.

Lessee shall be solely responsible to daily pick up the parking lot area and make it free and clean of any bottles, cans, debris, or broken glass.  Further, that Lessee keep the lawn and bushes in a general neat, trimmed, and clean appearance.  Lessee shall cause the parking area to be plowed and sanded or salted after each and every snow fall which shall reasonably require same.

10.  Lessee shall not make any structural alterations or additions to the Premises, but may make non-structural alterations provided that Lessor consents, which consent shall not be

unreasonably withheld or delayed, thereto in writing.  All such allowed alterations shall be done solely at the Lessee's expenses and shall be in quality at least equal to the present structure. All such allowed alterations shall meet all laws, regulations, and code requirements of any governmental or quasi-governmental agency which may have authority regarding same.

Lessee shall not cause, allow, or permit any mechanic's liens, or similar liens, to remain upon the Premises for labor or material furnished to Lessee or claimed to be furnished to the Lessee in connection with any work of any character performed or claimed to be performed at the direction of the Lessee and shall cause any such lien to be released or record forthwith without any cost to Lessor.  Any alterations or improvements made by Lessee shall become the property of Lessor at the termination of occupancy as provided herein.

11.  Lessee shall not assign or sublet the whole or any part of the Premises without the Lessor's prior written consent, which consent shall not be unreasonably withheld or delayed. Notwithstanding such consent, Lessee shall remain liable to Lessor for the payment of any and all rent and for the full performance of the covenants and conditions of this lease.

12.  Lessor or its agents may, at reasonable times, enter to view the Premises and make repairs and alterations as Lessor deems necessary and may show the Premises to others, and at any time within three (3) months before the expiration of the term, may affix to any suitable part of the Premises a notice for letting or selling the Premises and keep same so affixed without hindrance or

molestation.

13.  Lessee shall save the Lessor harmless from all loss and damage occasioned by the use or escape of water or by bursting pipes, as well as any claim or damage resulting from neglect in not removing snow and ice from the sidewalks, walkways, or parking area of the Premises, or by any nuisance made or suffered on the Premises.  The removal of snow and ice from the sidewalks, walkways, and parking area of the Premises shall be the sole and exclusive responsibility of the Lessee.

14.  Lessee shall, at the Lessee's sole and exclusive expense, maintain with respect to the Premises a broad form comprehensive general liability with a liability limit of $300,000.00, and liquor liability with a liability limit of $100,000.00/$200,000.00 in responsible companies qualified to do business in the Commonwealth of Massachusetts and in good standing therein insuring the Lessor and Lessee against the injury to persons or damage to property as provided.  Lessee shall provide to Lessor at the date of the execution of this lease a certificate of insurance, and shall provide new certificates of insurance thereafter thirty (30) days prior to the expiration of said policies to insure and satisfy Lessor that adequate insurance coverage is maintained by Lessee. Lessee shall ensure that each policy set forth, in the appropriate part or section, that the loss payee be listed as both Lessor and Lessee.  Lessee shall request its insurance carrier or carriers to send copies of any cancellation notice to Lessor.

7 of 13

15. Should any portion of the Premises be damaged by fire or other casualty, Lessor shall restore said premises as promptly as possible after using best efforts to obtain any necessary permits.

When such fire, casualty, or taking renders the Premises substantially unsuitable for their intended use, a just and proportionate abatement of rent shall be made, until such restoration is completed. Lessee may elect to terminate the lease if Lessor fails to restore the Premises to a condition substantially suitable for their intended use within one hundred fifty (150) days of said fire, casualty, or taking.

Lessor reserves, and Lessee grants to Lessor, all rights which the Lessee may have for damages or injury to the Premises for any taking by eminent domain, except for damage to Lessee's fixtures, property, or equipment. In a case of a taking by eminent domain which renders the Premises unsuitable for their intended use, including a reduction of 30% or more of the existing parking spaces, unless Lessor provides additional contiguous parking, then Lessee may elect to terminate this lease and in addition to the foregoing damages, Lessee shall be entitled to relocation expenses as part of the eminent domain damages.

16. In the event that:

(a) Lessee shall default in the payment of any installment of rent or other sum herein specified and such default shall continue for seven (7) days after written notice thereafter; or

(b) Lessee shall default in the performance or observance of any other of the Lessee's covenants, agreements, or

8 of 13

obligations hereunder and such default shall not be
corrected to Lessor's reasonable satisfaction within
twenty (20) days after written notice thereof; except, if
Lessee can demonstrate to Lessor that in good faith it is
using due diligence in curing the default, then Lessor
shall give Lessee another twenty (20) days to cure the
default; or

(c)  Lessee shall be declared bankrupt or insolvent according
to law, or, if any assignment shall be made of Lessee's
property for the benefit of creditors,

then Lessor shall have the right thereafter, while said default
continues, to re-enter and take complete possession and control of
the Premises, to declare the term of this lease ended, and remove
Lessee's effects without prejudice to any remedies which might be
otherwise used for arrears of rent or other default. Lessee shall
indemnify Lessor against all loss rent and other payments which
the Lessor may incur by reason of the termination of this lease
during the residue of the term. If Lessee shall default, after
reasonable notice thereof as set forth above, in the observance or
performance of any conditions or covenants on Lessee's part to be
observed under or by virtue of any of the provisions in any
article of this lease, the Lessor, without being under any
obligation to do so and without thereby waiving such default, may
remedy such default for the account and at the expense of the
Lessee.

If the Lessor makes any expenditures or incurs any obligations
for the payment of money in connection therewith, including but

9 of 13

not limited to, reasonable attorney fees in instituting, prosecuting or defending any action or proceeding, such sums paid or obligations insured, with the interest rate of 18 per cent per annum and costs, shall be paid to Lessor by Lessee as additional rent.

17. Any notice from Lessor to Lessee relating to the Premises or to the occupancy thereof, shall be deemed duly served, if left at the Premises addressed to the Lessee, or if mailed to Lessee at the Premises, registered or certified mail, return receipt requested, postage prepaid. Any notice to Lessor from Lessee relating to the Premises or to the occupancy thereof, shall be deemed duly served, if mailed to the Lessor, at Lessor's address or address that Lessor may from time to time give Lessee, by registered or certified mail, return receipt requested, postage prepaid. Until further notice, all rent and notices shall be paid and sent to Lessor at 33 Blake Road, Lexington, Middlesex County, Massachusetts.

18. Lessee shall at the end of the term of this lease remove all of its goods and effects from the Premises, including but not limited to all signs of any type affixed or painted by Lessee whether inside or outside of the buildings or structure. Lessee shall deliver to Lessor the Premises and all keys, locks thereto, and other fixtures connected therewith and all other alterations and additions made to or upon the lease premises, in the same condition now, fire or other casualty only and normal wear and tear excepted. In the event that Lessee fails to remove any of Lessee's property from the premises, Lessor is hereby authorized,

10 of 13

without liability to Lessee for loss or damage thereto, and at the sole risk to Lessee, to remove and store any of the property at Lessee's expense, or retain same under Lessor's control or to sell same at a public or private sale, without notice any and all property not so removed and apply the net proceeds of such sale to the payment of any sum due thereunder, or to destroy such property. The Premises shall be returned to Lessor by Lessee in broom clean condition.

19.  In the event that personal property taxes are levied against the Premises as a result of the personal property in the Premises, Lessee agrees to pay all personal property taxes as a result of such event no later than ten (10) days after which they become due and owing to the taxing authority.

20.  In addition to any other remedies that either party may have at law, equity, or pursuant to this lease, the party which caused the other party to incur costs, charges, expenses, shall be responsible for the other party's attorney fees in the event said party's actions are a breach of this agreement.

21.  No failure of either party to insist upon the strict performance of any term or condition of this lease or to exercise any right or remedy available on the breach thereof, and no acceptance of full or partial rent during the continuance of any such breach shall constitute a waiver of any such breach or of a: of the terms and conditions of the lease. No term or condition this lease required to be performed by either party, and no brea thereof, shall be waived, altered, or modified, except by a

written instrument executed and notarized by the parties.   No
waiver or failure of any term or condition of this lease shall
effect the other terms or conditions of this lease, and each other
terms or condition shall continue in full force and effect as if
the waived or failed term or condition never existed.  All rights
and remedies may be exercised and enforced either separately or
concurrently.  The exercise of one right or remedy does not
exclude or waive the right to exercise another.

    22.  In the event Lessor shall receive a bona fide offer to
purchase the Premises during the term of this lease, and the offer
to purchase shall be satisfactory to the Lessor, Lessor shall give
Lessee the privilege of purchasing the Premises at that price and
terms of the offer so made.  This privilege shall be given by a
notice sent to Lessee at the Premises by registered or certified
mail, return receipt requested, requiring Lessee to accept the
offer in writing and to sign a suitable purchase and sale
agreement, as well as any other agreement that may be required,
within a fifteen (15) day period after the receipt of said notice.

    The failure of Lessee to accept the offer to purchase or sign
any required agreements or contracts within the above specified
period provided shall nullify and void the privilege to Lessee but
only for such specific offer and not for any subsequent offers an
Lessor shall be at liberty to sell the premises to any other
person, firm, corporation, or entity upon the terms contained in
the offer within four (4) months from such failure.  Any
subsequent sale, except to Lessee, shall be subject to this lease
and any renewals or extensions thereof.

                            12 of 13

23.   The terms and conditions contained herein shall inure to
the benefit of and be binding upon the parties hereto, their
successors, assigns, heirs, executors, and administrators, and
this lease is being delivered, executed, and intended to be
performed in the Commonwealth of Massachusetts, sets forth the
entire contract as between the parties, and shall be construed ar
enforced in accordance with the laws of the Commonwealth of
Massachusetts.

24.   Lessor shall not directly or indirectly compete with
Lessee with a restaurant and lounge type business within a fifte
(15) mile radius of 251 Old Concord Road, Billerica, Middlesex
County, Massachusetts.

25.   This agreement shall supersede, replace, and terminate
any and all lease agreements or leases heretofore executed by ar
between the parties hereto in all respects.

IN WITNESS WHEREOF, the said parties set their hands and se
on the date as previously set forth.


AMR CORPORATION, by
MICHAEL E. RECK, President

TRINDA REALTY TRUST, by
LAWRENCE G. TREBINO, Trust



CERTIFICATION PLOT PLAN
BILLERICA, MASS
SCALE 1" = 50'

DATE: JULY 1970