**7**

## LANDLORD CONSENT TO ASSIGNMENT AND ASSUMPTION

This Consent is entered into as of this 18th day of July , 1998 by and among 251 Old Concord Realty Trust, a Massachusetts trust, ("Landlord"), 228 Tremont Corporation, a Massachusetts corporation ("Assignor") and Daniel L. Lombard, III, an individual, and Doghouse Products Inc., a Massachusetts corporation (collectively, "Assignee").

### RECITALS:

A.     Landlord (as successor in interest to 251 Old Concord Corp., successor by assignment from Lasrence G. Trebino, as Trustee of Trinda Realty Trust), as landlord, and Assignor (as successor by assignment from AMR Corporation), as tenant, are parties to that certain lease agreement dated August 29, 1991, as amended by an Amendment to Lease dated as of October 10, 1995 (collectively, the "Lease") pursuant to which Landlord has leased to Assignor certain premises located at 251 Old Concord Road, Billerica, Massachusetts (the "Building").

B.     Assignor and Assignee have entered into that certain agreement ("Assignment Agreement") attached hereto as Exhibit A whereby Assignor assigned all of its right, title and interest in and to the Lease to Assignee.

C.     Assignor and Assignee have requested Landlord's consent to the Assignment Agreement and the transaction described therein.

D.     Landlord has agreed to give such consent upon the terms and conditions contained in this Consent.

NOW THEREFORE, in consideration of the foregoing recitals which by this reference are incorporated herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord, Assignor and Assignee agree and represent as follows:

1.     Assignment Agreement.  Assignor and Assignee hereby represent and warrant that: (a) a true, complete and correct copy of the Assignment Agreement is attached hereto as **Exhibit A**; and (b) the Assignment Agreement fully assigns all of Assignor's right, title and interest in the Lease to Assignee (the "Transfer") .

2.     Representations.  Assignor hereby represents and warrants that Assignor (i) has full power and authority to assign its entire right, title and interest in the Lease to Assignee; (ii) has not transferred or conveyed its interest in the Lease to any person or entity, collaterally or otherwise; and (iii) has full power and authority to enter into the Assignment Agreement and this Consent. Assignee hereby represents and warrants that

-1-

Assignee has full power and authority to enter into the Assignment Agreement and this Consent.

3.    Assumption.    Notwithstanding anything to the contrary contained in the Assignment Agreement, Assignee, for itself and its successors and assigns, hereby assumes and agrees to perform and be bound by all of the covenants, agreements, provisions, conditions and obligations of the tenant under the Lease, including but not limited to, the obligation to pay Landlord for all adjustments of rent and other additional charges payable pursuant to the terms of the Lease.    Nothing contained in the Assignment Agreement shall be deemed to amend, modify or alter in any way the terms, covenants and conditions set forth in the Lease.

4.    No Release.    Nothing contained in the Assignment Agreement or this Consent shall be construed as relieving or releasing the Assignor from any of its obligations under the Lease, and it is expressly understood that Assignor shall remain liable for such obligations notwithstanding the subsequent assignment(s), sublease(s) or transfer(s) of the interest of the tenant under the Lease.

5.    Liquor Liability Insurance.    Pursuant to Paragraph 3 of the Amendment to Lease dated as of October 10, 1995, Assignee, as tenant under the Lease, shall, effective as of the date hereof, shall be obligated to maintain liquor liability insurance as required pursuant to Paragraph 14 of the Lease.

6.    Landlord's Consent.    In reliance upon the agreements and representations contained in this Consent, Landlord hereby consents to the Transfer.    This Consent shall not constitute a waiver of the obligation of the tenant under the Lease to obtain the Landlord's consent to any subsequent assignment, sublease or other transfer under the Lease, nor shall it constitute a waiver of any existing defaults under the Lease.

7.    Notice Address.    Any notices to Assignee shall be effective when served to Assignee at the Premises in accordance with the terms of the Lease.    From and after the effective date of the Assignment, notices to Assignor shall be served at the following address: 152 Pond Street, Winchester, Massachusetts 01890.

8.    Counterparts.    This Consent may be executed in counterparts and shall constitute an agreement binding on all parties notwithstanding that all parties are not signatories to the original or the same counterpart provided that all parties are furnished a copy or copies thereof reflecting the signature of all parties.

-2-

IN WITNESS WHEREOF, Landlord, Assignor and Assignee have executed this Consent on the day and year first above written.

LANDLORD:
251 Old Concord Realty Trust

By: _____

as Trustee, and not individually

ASSIGNOR:
228 Tremont Corporation

By: _Diane C. Plunkett_

Name: _DIANE C. PLUNKETT_

Title: _President_

ASSIGNEE:

_____

Daniel L. Lombard, III

Doghouse Products Inc.

By: _____

Name: _DAniel A Lomhard III_

Title: _President Doghouse Products Co._

-3-

EXHIBIT A

## **ASSIGNMENT OF COMMERICAL LEASE**

In consideration of the payment of $150,000.00 to 228 Tremont Corporation by Daniel L. Lombard, III, and Doghouse Products, Incorporated, pursuant to an Asset Sale Agreement between said parties dated April 30, 1998, and pursuant to Article 5.1 of said Asset Sale Agreement, 228 Tremont Corporation hereby assigns, sells, transfers and sets over to Daniel L. Lombard, III, and Doghouse Products, Incorporated, all of its rights, title and interest in, and all of its obligations and duties under, a Commercial Lease dated August 29, 1991, made by and between Lawrence G. Trebino, as Trustee of the Trinda Realty Trust (hereinafter "Original Lessor"), and AMR Corporation (hereinafter "Original Lessee"), whereby the Original Lessor agreed to lease to AMR Corporation certain premises fully described therein and situated at 251 Old Concord Road in Billerica, Middlesex County, Massachusetts. Pursuant to lawful Assignments of said Commercial Lease, the Trustees of 251 Old Concord Realty Trust, have succeeded to the rights, title, duties, obligations and interests in said Commercial Lease of the Original Lessor (and they are hereinafter referred to as "Lessor"), and 228 Tremont Corporation has succeeded to the rights, title, duties, obligations and interests in said Commercial Lease of the Original Lessee (and shall hereinafter be referred to as "Lessee").

By this Assignment, 228 Tremont Corporation assigns, sells, transfers and sets over to Daniel L. Lombard, III, and Doghouse Products, Incorporated, all that is described in said Commercial Lease, including its estate, right, title, term of years yet to come, and all options to extend its leasehold interest in the premises described therein, subject to the assumption and performance by Daniel L. Lombard, III, and Doghouse Products,

Incorporated, of the covenants, conditions, provisions, rental obligations and other

obligations of 228 Tremont Corporation set forth therein.

This Assignment shall be binding upon 228 Tremont Corporation, its successors,

trustees and assigns, and this Assignment shall enure to the benefit of Daniel L. Lombard,

III, and Doghouse Products, Incorporated, its successors and assigns.

**IN WITNESS WHEREOF,** the parties hereunto set their hands and seal this

_14_ day of __July__, 1998.

228 TREMONT CORPORATION

Daniel A. Lombard, III

DOGHOUSE PRODUCTS,
INCORPORATED

BY: _____  BY: _____  7/15/98
TITLE: President          TITLE: President
228 Tremont Corp          Doghouse Products Inc.

8

# Doghouse Bar & Grill

**251 Old Concord Road · Billerica, MA 01821**
**Phone (978)262-9364**
**www.doghousebar.com**

March 28, 2002

David Veo
Freedom Development Corporation
1 New England Executive Park
Burlington, MA 01803

Dear David:

As per our telephone conversations on March 19, and March 28, 2002. We have sold our interest in the business located at 251 Old Concord Rd Billerica. Please find the enclosed Purchase and Sale document.

In accordance with paragraph (11) of our commercial lease dated August 29, 1991. We are requesting the assignment of the lease to Paul Goshtigian, and/or his Corporation Alliance Management LLC.

He and his attorney Stuart H. Sojcher of 229 Berkley Street Boston, MA. have been provided with copies of the lease and are satisfied with the terms contained.

Mr. Goshtigian is more than qualified to purchase our business. He now owns several businesses including The Roxy Night Club in Boston and The Bane Bridge Restaurant in Chelmsford.

Please contact me as soon as possible with the name of your attorney or any other requirements you will need to proceed with the lease assignment. We expect this should take no more than twenty five days to complete the lease assignment.

Sincerely,

Noreen Lombard

Doghouse Products Inc.
Enc.
c.c./ John Crawley, Paul Goshtigian, Stuart Sojcher

## AGREEMENT

AGREEMENT made as of the 22$^{o1}$ day of March, 2002 by and between Doghouse Bar & Grill, Inc., a Massachusetts corporation (the "Seller"); and Paul Geshtigian or his nominee (the "Purchaser").

WHEREAS, the Seller owns and operates a restaurant business in the Town of Billerica under the trade name of "Doghouse Bar & Grill" (the "Business"); and

WHEREAS, the Purchaser desires to buy from the Seller certain of its assets;

NOW, THEREFORE, it is hereby agreed as follows:

1.  **Sale of Assets.** The Seller shall sell to the Purchaser the following assets, all of which are now used in the conduct of the Business (which assets are hereafter referred to as the "Assets") and are specified in detail in Schedule "A", attached hereto and incorporated herein by this reference:

> (i)   All of the Seller's goodwill;
>
> (ii)  All of the fixtures and equipment;
>
> (iii) All of the inventory (subject to adjustment as hereinafter provided in paragraph 2 (c) hereof);
>
> (iv)  The Seller's seven day all alcoholic beverages license (the "liquor license"); and
>
> (v)   The Seller's entertainment license (the "entertainment license").

1

2.    Purchase Price. (a)  The purchase price for the Assets
is $225,000.00, payable as follows:

(i)    $20,000.00 have been paid as a deposit (the
"Deposit") this day;

(ii)   $80,000.00 at the Closing, by cash or
certified or bank check; and

(iii)  The balance of $125,000.00 by a promissory note
(the "Note") bearing interest at 7% and
payable in fifty-nine (59) equal monthly
installments of $2,476.15 each and one (1)
final installment of $2,476.11, the first of
which sixty (60) installments shall be due one
(1) month after the date of Closing and the
remaining fifty-nine (59) installments monthly
thereafter, which Note shall be secured by an
appropriate security agreement granting to the
Seller a secured interest in the inventory,
equipment and accounts receivable of the
Business by the filing of an appropriate UCC-1
with the Town of Billerica the Commonwealth of
Massachusetts.

(b)    The Deposit shall be held in escrow by John L.
Crawley, Esq., as escrow agent, subject to the terms of this
agreement and shall be duly accounted for at the time for
performance of this Agreement.

2

(c) Within three (3) business days prior to the Closing, the parties shall take a joint inventory of the Seller's stock of liquors. At the Closing, the Purchaser shall pay to the Seller as additional consideration hereunder an amount equal to the wholesale cost of the stock of liquors identified by said inventory.

3.   Allocation of Purchase Price.   The Purchaser and the Seller have agreed that, after examining all relevant factors, a proper allocation of the purchase price is, and the purchase price shall be allocated as set forth in Schedule "B", attached hereto and incorporated herein by this reference.

4.   Closing.   The Closing shall take place at the offices of Stuart M. Sojcher, Esq., 223 Berkeley Street, Boston, MA 02116, on or before the tenth (10th) business day following fulfillment of all conditions precedent specified in paragraph 8 hereof, or at such other time and/or place and/or on such other date, as the parties shall mutually designate.  Time is of the essence.  At the time of the Closing, the Seller shall execute and deliver to the Purchaser such bills of sale and other instruments as may be necessary to transfer the Assets to the Purchaser and shall deliver possession thereof to the Purchaser.  All such bills of sale and other instruments will contain the usual warranties and affidavit of title and will effectively transfer to the Purchaser full title to the Assets, free and clear of all liens and encumbrances.

5.   Representations and Warranties of Seller.   The Seller represents and warrants as of the date hereof and as of the Closing

3

to the Purchaser, as follows:

    (a)  The Seller has good and marketable title to the Assets, free and clear of any mortgage, lien, pledge, charge, security interest, encumbrance, title retention agreement, option, equity or other adverse claim thereto.

    (b)  No action, suit, proceeding or investigation (whether conducted by any judicial or regulatory body or other person) is pending or threatened against the Seller, which, if adversely determined, would materially adversely affect the Assets or the financial transactions contemplated hereby.

    (c)  No representation or warranty by the Seller in this Agreement or in connection with the consummation of the transactions contemplated hereby contains or will contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements contained therein not false or misleading. There is no fact that the Seller has not disclosed in writing to the Purchaser which materially adversely affects the ability of the Seller to perform this Agreement or to perform any of the transactions contemplated hereby.

4

(d) The Seller's Board of Directors and Shareholders have duly authorized the execution and delivery of this Agreement to the Purchaser and the carrying out of its provisions. At the Closing, the Seller shall furnish to the Purchaser duly certified copies of the vote(s) authorizing the aforesaid actions.

(e) This Agreement has been duly executed and delivered by the Seller and constitutes the legal, valid and binding obligations of the Seller enforceable against the Seller in accordance with its terms.

(f) The Seller has a valid and subsisting lease to the commercial premises located at 251 Concord Road, Billerica, MA (the "Lease"), which Lease has more than four (4) years remaining on its current term and contains a provision which grants the lessee the right to extend the Lease for an additional five (5) years.

6. Liabilities.

(a) The Seller acknowledges that the Purchaser is acquiring the Assets hereunder without any assumption of the Seller's liabilities. The Seller covenants that it shall fully and timely satisfy all its liabilities to creditors. See paragraph 13 hereof.

(b) The Seller has paid or will pay or fully provide

5

for all federal and state income and other taxes which relate to the conduct of the Business through the date of the Closing. There is no pending tax claim or dispute on taxes which might result in a lien against the Assets. Any such taxes due as at the date of the Closing shall be withheld from the sales proceeds due the Seller by the Buyer's attorney and paid over forthwith thereafter to the applicable taxing authority(ies).

7.  <u>Conditions Precedent to Purchaser's Obligations.</u>  The Purchaser's obligations hereunder are specifically conditioned upon the Purchaser or his nominee receiving each of the following prior to the Closing:

(a)  The written consent of the Seller's landlord to assign the Lease to the Purchaser (the "Landlord's Consent");

(b)  An assignment of the Lease;

(b)  Notification from the Billerica Board of Selectmen (the "Board") of its approval of the transfer of the liquor license to the Purchaser; and

(c)  Notification from the Board of its approval of the transfer of the entertainment license to the Purchaser;

(d)  Notification from the Alcoholic Beverages Control Board ("ABCC") of its approval of the transfer of

6

the liquor license to the Purchaser;

(e)   A certificate of good standing from the Department of Revenue of the Commonwealth of Massachusetts with respect to any and all returns due and taxes payable under M.G.L. c 62C; and

(f)   A "good standing" certificate of legal existence issued by the Secretary of State of the Commonwealth of Massachusetts;

The Purchaser shall use his best and diligent efforts in making immediate application to the Board and the ABCC for transfer of the liquor license and the entertainment license, as the case may be, and in obtaining the Landlord's Consent.  In connection therewith, the Seller shall cooperate with the Purchaser in a timely manner including without limitation filing any documents requested by and appearing before the Board and the ABCC.  Further, Seller agrees to provide Purchaser with any and all information pertaining to the application of the Purchaser for a transfer of the existing liquor and entertainment licenses.  Finally, Seller and Purchaser agree to collaborate jointly on the preparation and filing of the application to the Board in connection with the transfer of the liquor and entertainment licenses, which cooperation shall include arranging a meeting between Purchaser and the Landlord, notifying the Board of the impending sale, and providing information relative to neighborhood associations in order to allow for meetings with such associations.

7

Within seven (7) days of the date hereof, the Seller shall provide the Purchaser with a copy of the Lease. Thereafter, the Purchaser shall have the right to terminate this Agreement because of his dissatisfaction with the terms of the Lease by notifying the Seller thereof within five (5) business days following the Purchaser's receipt of said copies.

8.    Indemnification.

The Seller agrees to indemnify and hold the Purchaser harmless from and with respect to any and all claims, liabilities, losses, damages, costs and expenses (including without limitation the fees and disbursements of accountants and legal counsel) related to or arising, directly or indirectly, out of:

(i)    any failure or any breach of any representation or warranty, covenant, obligation or undertaking made by the Seller in this Agreement, any Exhibit hereto, or any other agreement, statement, certificate or other instrument delivered pursuant hereto;

(ii)    the Seller's purchase, ownership or conduct of the Business prior to the Closing hereunder; and

(iii)    Seller's failure to pay any federal or state income or other taxes which relate to his conduct of the Business prior to the Closing.

9.    Survival of Representations and Warranties.    The

8

representations and warranties of the parties hereto contained in this Agreement or otherwise made in writing in connection with the transactions contemplated hereby shall be deemed material and, notwithstanding any investigation by any of the parties, shall be deemed to have been relied on by each of the parties and shall survive the Closing, and the consummation of the transactions contemplated hereby.

10.    **Further Assurance.**  The Seller will on request at any time or from time to time hereafter execute whatever instruments and take whatever action the Purchaser may deem necessary or desirable to effect, perfect or confirm of record or otherwise in the Purchaser the full right, title and interest in and to the Assets, free and clear of all restrictions, liens, encumbrances, rights, title and interest in others, or to collect, realize upon, gain possession of or otherwise acquire full right, title, and interest in and to the Assets, or to carry out the intent and purposes of the transactions contemplated hereby.

11.    **Verified List of Indebtedness.**  The parties agree that the Seller, at the time of Closing, shall submit to the Purchaser a verified list of the names, addresses and amounts of indebtedness to each of its creditors including federal, state and local tax liabilities, and shall deposit with the Purchaser's attorney a sufficient amount to pay all such creditors, with authority to said attorney to make such payments.

12.    **Broker.**  The Purchaser represents that it has dealt with

9

no broker with respect to this transaction, and hereby agrees to indemnify and hold the Seller harmless from and with respect to any and all claims, liabilities, losses, damages, costs and expenses (including without limitation the fees and disbursements of accountants and legal counsel) related to or arising, directly or indirectly, out of any broker's commission or finder's fee alleged to be due in connection with the transactions contemplated by this Agreement.

13.    Default.   The Purchaser understands and agrees that if, after all conditions precedent specified in paragraph 7 hereof have been satisfied, the Purchaser fails to fulfill the Purchaser's agreements herein, the Deposit shall be retained by the Seller as liquidated damages and this shall be the Seller's sole remedy at law or in equity for any default hereunder by the Purchaser.

14.    Due Diligence.   The Purchaser acknowledges and represents that the Purchaser has made its own independent investigation and evaluation as to the Business and the Assets and is acquiring the Business and the Assets in "AS IS" condition.  The Purchaser agrees that in no event shall the Seller be responsible or liable for any statements, warranties or representations made by any broker(s).

15.    Notice.   Any notice, payment or mailing given or made hereunder shall be sent by first class mail, postage prepaid, to the Purchaser c/o Stuart X. Sojcher, Esq., 229 Berkeley Street, Boston, MA 02116, and to the Seller c/o John L. Crawley, Esq., 5 Revolution Drive, Leominster, MA; or at such other address as any

10

party may have designated to the other party by written notice given pursuant hereto.

16.    Entire Agreement.    This Agreement sets forth the entire understanding of the parties, and it may not be changed except by a written document hereafter signed by the parties hereto.

17.    Assigns.    This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, successors and assigns.

18.    Counterparts.    This Agreement may be executed by the parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.    No party relying upon or seeking to enforce the provisions of this Agreement shall be required to produce or account for more than one such counterpart, each of which shall be fully valid and enforceable.

19.    Paragraph Headings.    The headings of paragraphs are for reference only and shall not limit or control the meaning thereof.

20.    Severability.    If any provision(s) or portion(s) of this Agreement shall be determined to be invalid or unenforceable either wholly or in part, the remainder of this Agreement, and of any such provision or portion shall survive and remain in full force and effect and each and every portion and provision of this Agreement shall, notwithstanding such invalidity or partial invalidity in any respect, be enforced to the fullest extent permitted by law.

11

21.   Governing Law.   This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as an instrument under seal as of the day and year first above written.

SELLER:
Doghouse Bar & Grill, Inc.

By: _____
                          , its President,
hereunto duly authorized

PURCHASER:

_____
Paul Goshtigian or his nominee

12



| | Attchment A Assets |
|---|---|
| All Licenses  Aprox. Value | $50,000.00 |
| Answering System/ Phones | $75.00 |
| Arctic Air 22cf Commercial Freezer | $1,500.00 |
| Arctic Air 22cf Commercial Refrigerator | $1,500.00 |
| Ashly Professional Compressor   (PA SYS) | $1,500.00 |
| Bar Maid 5 Brush Glass Washer | $620.00 |
| Cash Registers (3) | $1,950.00 |
| Chairs / Bar Stools (110) @ $40.ea | $4,400.00 |
| Coin Operated Fooz Ball | $2,200.00 |
| Coin Operated Pool Tables  (3) @ $2500.ea | $7,500.00 |
| Commercial Mop Bucket W Ringer | $120.00 |
| Credit Card Terminal / Printer | $1,000.00 |
| Custom Over Shelf With 2 Warmers for Sandwich unit | $3,500.00 |
| Dart Boards And Backs (2) | $300.00 |
| Dishwasher Strainers (3) | $160.00 |
| DOD Professional Graphic Equalizers (2) ( PA SYS) | $1,800.00 |
| Dodge Travco Van | $5,000.00 |
| Electric Steam Table | $1,200.00 |
| Everpure Water filters | $175.00 |
| Fax Machine | $600.00 |
| Free Standing Shelving and Warmer Table | $1,900.00 |
| Glass Cart Caddy | $170.00 |
| Hot Dog Warmer | $300.00 |
| Hudson 5ft Refrigerated Sandwich Unit | $5,500.00 |
| Ice Wells 2 | $600.00 |
| JBL Sound Speakers Mains  (2)  (PA SYS) | $1,100.00 |
| JBL Sound Speakers Monitors  (2)  (PA SYS) | $1,000.00 |
| Jet Spray Machine/Dispenser | $800.00 |
| Magnavox 19 Inch Television | $200.00 |
| Magnavox 19 Inch Television with Mounting Bracket | $300.00 |
| Merchandise Display Cases | $1,000.00 |
| Metro Shelving Units (3) | $1,400.00 |
| Microwave Oven | $900.00 |
| Misc. Bar Supplies | $300.00 |
| Misc. Kitchen Pots Pans Etc. | $3,600.00 |
| PA SYS Case/Stand | $400.00 |
| Panasonic -VCR  PV8451 | $450.00 |
| Proctor Silex 4 Slice Toaster | $130.00 |
| QSC Professional Power Amp. 1400  (PA SYS) | $1,100.00 |
| QSC Professional Power Amp. 1700  (PA SYS) | $1,200.00 |
| Removable Decorations Signs & Lights Inc 10 Neon | $2,500.00 |
| Removable Stage lighting | $3,000.00 |
| Sharp 27 Inch Television with Mounting Bracket | $700.00 |
| Sharp Projection TV  w elc. Screen | $5,500.00 |
| Smoke Eater & Filters (2) | $3,300.00 |
| Sony  50 CD Player Model CDPCX53 | $450.00 |
| Sony  AM/FM Control Receiver STR DE 315 | $370.00 |
| 27 Inch Television | $1,200.00 |
| Sony 27 Inch Trinitron Television | $600.00 |
| Sound Craft 24 Track Mixing Board  (PA SYS) | $2,400.00 |
| Stainless Steel 3 ft Clean Dish Table | $250.00 |
| Stainless Steel 4ft Prep Tables (2) | $900.00 |
| Stainless Steel 5ft Equipment Stand | $700.00 |
| Supplies  I.E. Paper, Bags, Cleaning Wax Etc | $800.00 |
| Tables 28 @ 60 Ea. | $1,680.00 |
| Triple S Contractor Floor Buffer/ Rug Shampooer | $1,600.00 |
| True Beer Chest (Cooler) | $1,600.00 |
| True Display Chest (Cooler) | $1,200.00 |
| True Glass Chiller | $1,300.00 |
| Waring Commercial Blender | $430.00 |
| Whirlpool 16cf Freezer | $950.00 |
| Whirlwind 100ft 16 Track Snake  (PA SYS) | $750.00 |
| Work Station Computer Desk Set up | $1,300.00 |

**Total Assets**                                               **$140,930.00**

                                              **Attachment B  Equipment-- Lease Hold & Improvement**

| | |
|---|---|
| 12 Ft Stainless Steel Hood/Fan Fire protection | $9,500.00 |
| American Standard 10 Ton  Gas Heat / AC Unit | $10,000.00 |
| Draft System 10 Line | $6,500.00 |
| Hatco 15kw Hot Water Booster For Dishwasher | $400.00 |
| Hobart Pass Through Dishwasher | $5,000.00 |
| Hoshizaki Ice Machine With 226 Gal Bin & Filtration Sys | $3,900.00 |
| Imerial 24 Inch Fryolator With Stainless Steel Pot | $1,100.00 |
| Imerial 6 Burner Range With Oven & Over shelf | $2,900.00 |
| International Constant Grease Skimmer | $4,700.00 |
| Stainless Steel 12 Inch Hand Sink | $120.00 |
| Stainless Steel 2 Compartment  Sink | $350.00 |
| Stainless Steel 24 inch Sinks (2) | $350.00 |
| Stainless Steel 3 Compartment Sink With Drain Board | $600.00 |
| State Sandblaster Self Cleaning Commercial Hot Water Heater | $5,700.00 |
| T & S Prerince Unit Table for Dishwasher | $500.00 |
| Walkin Refrigerator | $3,000.00 |
| Wall Hung / AC Unit | $2,000.00 |
| Wyott 24 Inch Flat Top Grill | $1,100.00 |
| Wyott 36 Inch Charbroiler | $1,200.00 |

**Equipment**                                                 **$58,920.00**

**Total Assets & Equipment**                                  **$199,850.00**

**Note: Attachment B**
**Equipment attached to building is sold with lease for depreciation**

**9**

LANDLORD CONSENT TO ASSIGNMENT AND ASSUMPTION

This Consent is entered into as of this 10th day of _MAY___, 2002, by and among Riverhurst Realty Trust, a Massachusetts trust, ("Landlord"), Doghouse Products, Inc., a Massachusetts corporation, and Daniel L. Lombard, III, an individual ("Assignor") and Paul Goshtigian, ("Assignee").

RECITALS:

A.  Landlord (as successor in interest to 251 Old Concord Corp., successor by assignment from Lawrence G. Trebino, as Trustee of Trinda Realty Trust), as landlord, and Assignor (as successor by assignment from 228 Tremont Corporation), as tenant, are parties to that certain lease agreement dated August 29, 1991, as amended by an Amendment to Lease dated as of October 10, 1995 (collectively, the "Lease") pursuant to which Landlord has leased to Assignor certain premises located at 251 Old Concord Road, Billerica, Massachusetts (the "Building").

B.  Assignor and Assignee have entered into that certain agreement ("Assignment Agreement") attached hereto as Exhibit A whereby Assignor assigned all of its right, title and interest in and to the Lease to Assignee.

C.  Assignor and Assignee have requested Landlord's consent to the Assignment Agreement and the transaction described therein.

D.  Landlord has agreed to give such consent upon the terms and conditions contained in this Consent.

NOW THEREFORE, in consideration of the foregoing recitals which by this reference are incorporated herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord, Assignor and Assignee agree and represent as follows:

1.  **Assignment Agreement**.  Assignor and Assignee hereby represent and warrant that:  (a) a true, complete and correct copy of the Assignment Agreement is attached hereto as Exhibit A; and (b) the Assignment Agreement fully assigns all of Assignor's right, title and interest in the Lease to Assignee (the "Transfer").

2.  **Representations**.  Assignor hereby represents and warrants that (i) has full power and authority to assign its entire right, title and interest in the Lease to Assignee; (ii) has not transferred or conveyed its interest in

-1-

the Lease to any person or entity, collaterally or otherwise;
and (iii) has full power and authority to enter into the
Assignment Agreement and this Consent. Assignee hereby
represents and warrants that Assignee has full power and
authority to enter into the Assignment Agreement and this
Consent.

3. __Assumption__. Notwithstanding anything to the
contrary contained in the Assignment Agreement, Assignee, for
itself and its successors and assigns, hereby assumes and
agrees to perform and be bound by all of the covenants,
agreements, provisions, conditions and obligations of the
tenant under the Lease, including but not limited to, the
obligation to pay Landlord for all adjustments of rent and
other additional charges payable pursuant to the terms of the
Lease. Nothing contained in the Assignment Agreement shall
be deemed to amend, modify or alter in any way the terms,
covenants and conditions set forth in the Lease.

4. __No Release__. Nothing contained in the Assignment
Agreement or this Consent shall be construed as relieving or
releasing the Assignor from any of its obligations under the
Lease, and it is expressly understood that Assignor shall
remain liable for such obligations notwithstanding the
subsequent assignment(s), sublease(s) or transfer(s) of the
interest of the tenant under the Lease.

5. __Liquor Liability Insurance__. Pursuant to Paragraph 3
of the Amendment to Lease dated as of October 10, 1995,
Assignee, as tenant under the Lease, shall, effective as of
the date hereof, shall be obligated to maintain liquor
liability insurance as required pursuant to Paragraph 14 of
the Lease.

6. __Landlord's Consent__. In reliance upon the agreements
and representations contained in this Consent, Landlord hereby
consents to the Transfer. This Consent shall not constitute
a waiver of the obligation of the tenant under the Lease to
obtain the Landlord's consent to any subsequent assignment,
sublease or other transfer under the Lease, nor shall it
constitute a waiver of any existing defaults under the Lease.

7. __Notice Address__. Any notices to Assignee shall be
effective when served to Assignee at the Premises in
accordance with the terms of the Lease. From and after the
effective date of the Assignment, notices to Assignor shall be
served at the following address:

8.  Counterparts.  This Consent may be executed in counterparts and shall constitute an agreement binding on all parties notwithstanding that all parties are not signatories to the original or the same counterpart provided that all parties are furnished a copy or copies thereof reflecting the signature of all parties.

IN WITNESS WHEREOF, Landlord, Assignor and Assignee have executed this Consent on the day and year first above written.

LANDLORD:
Riverhurst Realty Trust

By: _____
     as Trustee and not individually

ASSIGNEE:
Paul Goshtigian

By: _____

Name: _____

Title: _____

ASSIGNOR:

_____
Daniel L. Lombard, III

Doghouse Products Inc.

By: _____

Name: _____

Title: _____

/e/riverhurst.consent

-3-